IN THE COURT OF APPEALS OF THE STATE OF IDAHO

**Docket No. 40727**

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | 2013 Opinion No. 40 |
| TERMINATION OF THE PARENTAL | ) | |
| RIGHTS OF JANE (2013-05) DOE, | ) | Filed: July 3, 2013 |
| ------------------------------------------------------------ | ) | |
| IDAHO DEPARTMENT OF HEALTH & | ) | Stephen W. Kenyon, Clerk |
| WELFARE, | ) | |
| | ) | |
| Petitioner-Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JANE (2013-05) DOE, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Bryan K. Murray, Magistrate.

Order terminating parental rights, affirmed.

Randall D. Schulthies, Bannock County Public Defender; John C. Dewey, Deputy Public Defender, Pocatello, for appellant. John C. Dewey argued.

Hon. Lawrence G. Wasden, Attorney General; James P. Price, Deputy Attorney General, Pocatello, for respondent. James P. Price argued.

_____

GRATTON, Judge

Jane Doe appeals from the magistrate's order terminating her parental rights to her child, M.H. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Doe gave birth to M.H. in November 2007. The father of M.H. died in an accident in August 2009. Doe and the father used methamphetamine together and following the father's death, Doe abused methamphetamine daily, including intravenous use. During this time, Doe often left M.H. with family members for extended periods of time. On August 29, 2011, Doe picked M.H. up from her maternal grandmother's house, where she had been staying for the

1

previous two weeks, and went to a friend's house. Thereafter, a police officer found Doe outside the home passed out, with M.H. in the vicinity. Doe was arrested and charged with injury to a child, Idaho Code § 18-1501(1), and resisting or obstructing officers, I.C. § 18-705. M.H. was placed in the custody of the Idaho Department of Health & Welfare (Department) and has been in State custody since that time. M.H.'s foster parent is her paternal aunt, who is also the candidate for adoptive parent. Subsequently, a case plan was agreed upon by Doe and the Department and ordered by the magistrate. The case plan focused on several key areas, including parenting skills, stability, mental health, and substance abuse.

Doe was offered the opportunity to join family treatment drug court and a parenting program at Idaho State University, but did not enter either program. Additionally, Doe refused initial drug tests and assessments, but admitted to continual methamphetamine use. In 2012, Doe completed an assessment for substance abuse and qualified for inpatient treatment. However, in February 2012, prior to entering treatment, she was arrested in Bingham County and charged with possession of a controlled substance, I.C. § 37-2732(c)(1); use of a controlled substance, I.C. § 37-2732C(a); and possession of drug paraphernalia, I.C. § 37-2734A(1). As a consequence, she lost the opportunity to participate in the program.

In April 2012, Doe completed a new assessment and qualified for intense outpatient treatment. She entered treatment and was making progress; however, in June 2012, she admitted to using methamphetamine after she was caught falsifying a drug test. Doe admitted to a probation violation and was incarcerated. While in jail, Doe completed a parenting program approved by the Department and she was released from jail in July 2012. On August 27, 2012, Doe completed a substance abuse assessment and thereafter entered intensive outpatient treatment, where she began to make progress.

On September 20, 2012, the Department filed a petition to terminate Doe's parental rights to M.H. The Department sought termination on the grounds of neglect. The trial for termination occurred on November 28, 2012. At the time of trial, Doe's Bingham County charges were still pending. Following the trial, the magistrate ordered Doe's parental rights terminated on three independent grounds. First, the magistrate found grounds for termination based on neglect as defined by I.C. § 16-2002(3)(a), and its corresponding definition of conduct constituting neglect in I.C. § 16-1602(25)(a) and (b). Second, the magistrate found grounds for termination based on neglect as defined by I.C. § 16-2002(3)(b), and its corresponding time standard established by

2

I.C. § 16-1629(9).  Third, the magistrate found grounds for termination based on abandonment as defined by I.C. § 16-2002(5) because Doe willfully failed to pay child support.[1]  The magistrate also determined that termination was in the best interest of the child.  Doe timely appeals.

## II.

## ANALYSIS

### A.    Standard of Review

A parent has a fundamental liberty interest in maintaining a relationship with his or her child.  *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002).  *See also Quilloin v. Walcott*, 434 U.S. 246, 255 (1978).  This interest is protected by the Fourteenth Amendment to the United States Constitution.  *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007).  "Implicit in [the Termination of Parent and Child Relationship Act] is the philosophy that wherever possible family life should be strengthened and preserved . . . ."  I.C. § 16-2001(2).  Therefore, the requisites of due process must be met when the Department intervenes to terminate the parent-child relationship.  *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006).  Due process requires that the Department prove grounds for terminating a parent-child relationship by clear and convincing evidence.  *Id.*

Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by "clear and convincing evidence."  *Santosky v. Kramer*, 455 U.S. 745, 746 (1982).  *See also* I.C. § 16-2009; *Doe*, 146 Idaho at 761-62, 203 P.3d at 691-92; *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009).  The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated.  *Id.*  The Idaho Supreme Court has also said, however, that the substantial

_____

[1]    The State acknowledges that abandonment was not a ground for termination listed in the termination petition, and that it did not argue the issue of abandonment in its post-trial brief.  As a result, the State does not argue on appeal that Doe abandoned M.H.  Accordingly, the State waives this argument.

evidence test requires a greater quantum of evidence in cases where the trial court finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

In this case, the magistrate terminated Doe's parental rights on the ground of neglect, I.C. § 16-2005(1)(b). Idaho Code § 16-2002(3) defines "neglect" in two ways. First, neglect is defined as any conduct included in section 16-1602(25). I.C. § 16-2002(3)(a). Pursuant to I.C. § 16-1602(25), a child is neglected if he or she "is without proper parental care and control, or subsistence" or if the parents "are unable to discharge their responsibilities to and for the child." Second, neglect is defined as situations where the "parent(s) has failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth in section 16-1629(9)." I.C. § 16-2002(3)(b). The time standard established by I.C. § 16-1629(9) is defined as when "a child is placed in the custody of the department and was also placed in out of the home care for a period not less than fifteen (15) out of the last twenty-two (22) months from the date the child entered shelter care." In this case, the magistrate found neglect pursuant to both definitions.

## B. Neglect Under Idaho Code § 16-2002(3)(a)

Doe claims that the magistrate committed multiple errors by terminating Doe's parental rights on the grounds of neglect as defined by I.C. § 16-2002(3)(a). Specifically, Doe argues that: (1) the magistrate's decision to terminate was not supported by the evidence; (2) the

4

magistrate erred by finding that the biggest issue in the case was Doe's pending Bingham County charges; (3) the magistrate erred by finding that M.H. would not be returned to Doe in the near future; (4) the magistrate erred by phrasing the issue as "[i]f not for termination is [Doe] ready to have [M.H.] back in her home"; and (5) the magistrate erred by not finding that the Department failed to make reasonable efforts to reunite the family. We discuss each issue in turn.

### 1.    Evidence

Doe contends that the magistrate's decision is not supported by the evidence because the magistrate allegedly emphasized her past history over her recent progress. Doe has a long history of substance abuse, demonstrated inability to parent her children, and, until a few months prior to the termination hearing, failure to comply with the case plan and court orders in this case. However, as the magistrate repeatedly noted, Doe had made progress in the approximately four months prior to the hearing. Therefore, Doe asserts that the question before this Court is whether the magistrate erred in terminating Doe's parental rights in light of her recent good progress.

#### a.    Doe's history

Substantial evidence was presented at the termination hearing regarding Doe's criminal history and drug use, her history with her other children, her general ability to support a child, and her insufficient efforts to comply with the case plan.

Doe has a long history of drug use; Doe met M.H.'s father in drug court. She used drugs with the father and after his death she used methamphetamine daily, including intravenous use. Doe was using methamphetamine during the time M.H. was taken into State custody. She testified that she was using methamphetamine on a daily basis and that she did not submit to any drug tests at the beginning of her case plan because she was still using drugs, she would test positive, and did not care about anything but drugs. Doe claimed that the last time she used an illegal substance was on January 27, 2012. However, in February 2012 Doe was arrested in Bingham County and charged with drug-related offenses. The Bingham County charges stemmed from the discovery of drug paraphernalia in a backpack that contained Doe's personal belongings. Doe testified that the backpack was not hers and maintains her innocence. Thereafter, in June 2012, Doe was caught faking a drug test. She testified that she falsified the drug test in order to cover up cold medicine that she was taking. A drug use admission form was admitted into evidence that contained a handwritten admission by Doe that she falsified the drug

test. Further, a counselor from the Road to Recovery Program testified that Doe admitted to her that she had used methamphetamine in June 2012.

As to other criminal history, Doe was charged with a DUI in 2001 which qualified her for drug court. She also has possession of paraphernalia, possession of a controlled substance, and injury to child charges. She had two additional DUIs in 2009 and 2012 and another injury to child in 2009. Doe had been in jail multiple times before M.H.'s birth. Since M.H. was born, Doe was in and out of jail approximately sixteen times. At the time of the hearing, Doe's Bingham County charges were still pending. Additionally, Doe was on probation stemming from a second DUI offense. She has violated her probation on two occasions and faces a third probation violation if she is found guilty of the Bingham County charges. Her probation officer testified that if she is found guilty of the Bingham County charges, he would recommend that her probation be revoked and her suspended jail sentence of approximately 260 days be imposed.

Evidence was also presented at the termination hearing regarding Doe's other children and her past history of child protection cases. Doe has five children in addition to M.H. Two of her children are adults. Three of her children are in the custody of their fathers, although one child resides with his maternal grandmother. A safety assessor from the Department testified that Doe had been the subject of thirty-one (31) referrals to the Department since 1999. Child protection cases were opened in 2003 and 2005. Doe also testified that in 2009 she was charged with injury to a child for allegedly allowing her daughter to go to school in a snowstorm with no socks. This led to the Department opening another child protection case and resulted in the child being placed in the custody of the father.

Evidence was also presented at the termination hearing regarding Doe's ability to support a child. M.H.'s paternal aunt and paternal grandmother testified that Doe spent substantial time away from M.H. and they started keeping records in 2009. Specifically, the aunt testified that Doe left M.H. with the aunt for 67 days in 2009, 101 days in 2010, and 21 days in 2011, until M.H. was placed in foster care with the aunt. During this time, M.H also lived with other family members, including two to four months with her maternal grandmother in 2010 and several weeks with her paternal grandmother while Doe was in jail in 2011. Doe did not keep in touch while M.H. was with relatives and did not attempt to provide necessities.

Doe testified that her first job since the birth of M.H. in 2007 was a two-month employment period at a convenience store in the summer of 2012 that ended in her being fired.

Doe testified that her child support obligation is about $480 per month, and that she is over $10,000 in arrears. More specifically, Doe's eldest minor child lives with his maternal grandmother, but his father has custody. Her fourth child lives with his father in Kansas and Doe is ordered to pay $289 per month in child support. Her fifth child is nine years old and Doe is ordered to pay $152.60 per month in child support. Doe was ordered to pay $32 per month for M.H., but is over $800 in arrears. Doe does not voluntarily make payments, rather her wages, if any, are garnished. She becomes further behind in child support payments each month. She also owes over $2,000 in criminal fines and $4,000 in social security overpayments (due to improperly receiving survivor benefits while M.H was removed from her home). Doe also had nearly $2,000 in utility bills at the time of the hearing. Additionally, Doe testified that she did not have a driver's license, due to suspension from DUIs, and would not get her driver's license back until she paid fees of $700.

In regard to residence, Doe testified that she lived with her mother off and on from 2010 to 2012. She also lived with a boyfriend periodically. A safety assessor from the Department testified that Doe was homeless and bouncing between other people's homes from the time M.H. was taken into State custody until October 2012.

Doe's case plan was also admitted as an exhibit at the termination hearing. The case plan focused on parenting skills, stability, mental health, and substance abuse. Part of the case plan required Doe to complete a parenting course. Doe failed to participate in a Department-approved parenting class at Idaho State University. A case manager for the Department also testified that Doe was admitted to family treatment drug court in December 2011, but Doe refused to participate.

The case plan also required Doe to participate in random drug testing. The case manager testified that she called Doe three times a week from October 2011 through February 2012 to request a drug test. Doe never submitted to a drug test during that period, but did freely admit to drug use during that time. As noted, Doe was caught falsifying a drug test in June 2012 and acknowledged at that time that it was because of methamphetamine use.

In regard to substance abuse treatment, at the start of the case Doe failed to complete an assessment. In January 2012, a substance abuse assessment was completed, recommending inpatient treatment. Inpatient treatment was lost when Doe was arrested in Bingham County. After being released, she completed another assessment recommending intensive outpatient

7

treatment which she started in April 2012, but the funding source ended while Doe was in jail on a probation violation in June/July 2012. Another assessment was not completed until late August 2012. A lapse in treatment of about three months occurred between April and August 2012.

Evidence relating to visitation was also admitted at the termination hearing. The case manager testified that at the beginning of the case plan visitations were very sporadic, depending on their ability to contact Doe, and that Doe would attend the visits while she was under the influence of drugs. She missed sixteen scheduled visits, largely due to incarceration. She also testified that Doe regularly arrived late to visits. Doe was allowed to contact the foster home by telephone, but only did so three or four times in the year preceding the hearing.

### b. Doe's recent progress

Evidence from the hearing also indicated that Doe made progress following her release from jail in July 2012 and being advised in August 2012 of the decision to seek termination. Again, the petition was filed on September 20, 2012, and the termination hearing was held on November 28, 2012.

As noted above, Doe was incarcerated until July 2012. On August 27, 2012, Doe completed another substance abuse assessment and thereafter began intensive outpatient treatments and failed no drug test to the time of the hearing. Doe's adult daughter testified that Doe had been sober. However, a case manager testified that in September 2012, Doe told her about a technique to mask a drug test result.

In July 2012, Doe obtained a job conducting surveys for a research company twenty-eight to thirty-two hours per week. Depending upon success in completing surveys, she was paid variably from $8 to $10 per hour.

On September 28, 2012, Doe completed a mental health assessment. She also completed a family assessment in September 2012. Doe began counseling in mid to late October 2012. At the time of the hearing, she had completed six out of twelve steps of moral recognition thinking. The CASA volunteer assigned to the case testified that Doe was "doing very well" in her treatment, but also added that she thought "it's just doing really well just a little too late." Additionally, Doe's case manager testified that Doe was doing "good" in treatment, was "engaged" in the sessions, and had not failed any drug tests during the three months prior to the hearing.

8

On October 16, 2012, Doe rented an apartment. Pictures of the apartment were admitted into evidence and indicate that the apartment was clean and big enough for two people.

On November 5, 2012, Doe provided the Department with a budget. On November 26, 2012, Doe took a pre-test for her GED. Doe was scheduled to take the GED test the week following the termination hearing. Doe testified that she hoped to enroll in college.

Although progress was made, as noted above, Doe's criminal proceeding in Bingham County remained pending. In addition, the potential probation violation in Bannock County remains dependent upon the Bingham County case. Half of her paycheck is being garnished. Doe is in the first of four phases in her treatment and will need to remain in intensive outpatient treatment for a least another year.

### c. The magistrate's factual findings

Following the termination hearing, the magistrate made several factual findings regarding Doe's history. The magistrate found that Doe abused methamphetamine from 2009 to 2012. Additionally, the magistrate found that Doe was on probation resulting from a DUI charge, had violated that probation on two occasions, and was facing a third probation violation if she was found guilty of the Bingham County charges. The magistrate also found that Doe has a history of child protection cases and that she had a child removed from her custody in 2005 and another child removed in 2009. The magistrate found that Doe lived a life of homelessness, "moving from place to place," and that Doe had been and out of jail three times in 2009 and eight times in 2010. Additionally, Doe has significant financial obligations stemming from back child support, fines, court costs, and from wrongfully taking social security money. The magistrate also found that Doe left M.H. with family members for extended periods of time, including at least 67 days in 2009, 101 days in 2010, and 21 days in 2011. Further, when M.H. came into State custody, she was "behind in her immunizations and had dental problems serious enough to require surgery." The magistrate also found that Doe's case plan got off to a "slow if not horrible start," as Doe refused to enter family treatment drug court, did not enter a parenting course at Idaho State University, refused to submit to drug tests, continued to use methamphetamine, was arrested on drug-related charges, and falsified a drug test.

The magistrate also expressly recognized the progress that Doe made in the months prior to the termination hearing. The magistrate found that Doe had passed all drug tests since August 2012 and that "[s]ince that time there is no indication of substance abuse." The magistrate also

found that Doe is "now doing well on probation pending the outcome of charges in Bingham County." Additionally, at the time of the termination hearing, Doe was making good progress in intensive outpatient treatment, was taking medication for depression and anxiety, had completed an approved parenting program while in jail, obtained a "two bedroom clean and furnished apartment," obtained employment, and had taken steps toward obtaining her GED. The magistrate also noted that there is a loving relationship between Doe and M.H. Nonetheless, the magistrate concluded that Doe neglected M.H. and that termination was in the best interest of M.H. Doe asserts that in light of her belated progress, the magistrate should not have ordered termination. Her arguments are addressed below.

### d.    Doe's argument

Doe relies solely on *Idaho Dep't of Health & Welfare v. Doe III*, 150 Idaho 752, 250 P.3d 803 (Ct. App. 2011) to support her assertion that the magistrate erred by relying too much on her past history and ignoring her current progress. In *Doe III*, this Court reversed the magistrate's decision to terminate a father's parental rights. *Id.* at 765, 250 P.3d at 816. That case was initiated after the father, a heavy alcoholic, was arrested for striking one of his children. The children were taken into State custody and a case plan was developed. The father initially complied with the case plan by attending AA meetings and by attending three weekly visits. Thereafter he relapsed, lost contact with the Department, and was arrested for public intoxication. After spending time in jail, the father again showed progress with his case plan. For the next four months, he attended his alcohol treatment sessions, completed his assignments, obtained employment, and remained sober. Following this four-month period, the Department filed a petition to terminate the father's parental rights. The magistrate terminated the father's parental rights based on abuse and neglect. On appeal, the father did not contest neglect, but only contested the finding that termination was in the children's best interests. This Court reversed, determining that the magistrate placed

> excessive emphasis upon Father's admittedly abhorrent behavior prior to the removal of the children from his home . . . while disregarding or giving minimal attention to the compelling evidence of Father's success in overcoming alcoholism, complying with treatment requirements, maintaining remunerative employment, and becoming a nurturing parent with whom the children had developed a strong bond.

*Id.* at 763, 250 P.3d at 814.

10

In the instant case, Doe contends that the magistrate's decision, like *Doe III*, disregarded her current progress. However, while in both cases there is evidence of progress prior to termination, there are also significant differences. In *Doe III*, the father immediately took an interest in his case plan by completing a substance abuse assessment, beginning alcohol treatment and AA, and attending three weekly visits with his children. He was employed. *Id.* at 754, 250 P.3d at 805. He relapsed once in the middle of his case plan and was uninvolved with the case plan for almost two months, followed by a two-month period of incarceration. He lost his job. Thereafter, he was actively engaged in his case plan for a period of eight months until his parental rights were terminated. *See id.* at 754-56, 250 P.3d at 805-07. Father regained employment, was working more than full time, attended AA meetings up to three times per week, attended prescribed alcohol treatment classes Monday through Thursday for two to three hours per evening, voluntarily attended a support group for three to four hours each Friday night at a church, faithfully attended weekly visits with his children, and complied with all aspects of his case plan. *Id*. at 758, 250 P.3d at 809. The father took care of all pending legal matters and was compliant with probationary terms. *Id*. at 754, 250 P.3d at 805.

Here, Doe was uninterested in the case plan from the beginning. She did not garner any interest until after being released from jail in July and having been told in August 2012 that the decision to pursue termination had been made. Further, Doe did not have just one relapse, but continued to abuse drugs for the first ten months of the case plan. Therefore, Doe spent the first ten months uninvolved in the case plan. Unlike the father in *Doe III*, Doe's progress came largely after the decision to seek termination and some on the very eve of trial. Moreover, as discussed more fully below, Doe has not taken care of pending legal matters and, thus, concern as to that outcome persists. In *Doe III*, this Court took issue with the magistrate's factual findings which faulted the father for failing to complete matters which were not part of the case plan, imposed completion dates not part of the plan, failed to even mention the father's relationship with the children or his behavior during weekly visits, and focused on failure to comply with minor reporting elements of the plan "while disregarding or giving minimal attention to the compelling evidence of Father's success in overcoming alcoholism, complying with treatment requirements, maintaining remunerative employment, and becoming a nurturing parent with whom the children had developed a strong bond." *Id*. at 763, 250 P.3d at 814. By contrast, here, Doe does not challenge the compliance findings by the magistrate; the magistrate

very clearly noted all progress and efforts at compliance and specifically mentioned the relationship between Doe and M.H. Nonetheless, on balance, the magistrate determined that neglect had been shown and that termination was appropriate and in the best interest of M.H.[2]

The State argues that this case is more akin to *In re Doe*, 152 Idaho 953, 277 P.3d 400 (Ct. App. 2012). In that case, a mother admitted to methamphetamine use during pregnancy, resulting in the initiation of a child protection case upon the birth of the child. The mother failed to comply with her case plan from the beginning by missing treatment sessions that resulted in her discharge from the treatment program. She admitted to methamphetamine use throughout this time and even arrived at her assessments high. About seven months after the case plan was initiated, the mother was arrested and incarcerated for failing to attend drug court. Three months after that, the mother was again arrested for a probation violation after admitting to methamphetamine use. The mother was incarcerated for four months for the probation violation. During this time, she participated in outpatient therapy, attended bi-weekly Narcotics Anonymous classes, and attended church meetings. After her incarceration, she continued treatment, attended classes to work towards her high school diploma, participated in counseling, and tested clean on all her drug tests. In sum, the mother failed to participate in her case plan for the initial ten months, then cleaned up and made progress during the six months prior to her parental rights being terminated. *See id.* at 953-56, 277 P.3d at 400-03. In that case, this Court affirmed the magistrate's decision to terminate the mother's parental rights, concluding that substantial and competent evidence supported the finding of neglect due to her inability to discharge her parental responsibilities. *Id.* at 959, 277 P.3d at 406. Doe argues that the instant case is distinguishable from *In re Doe* because the mother in that case did not have employment or appropriate housing at the time of the termination hearing.

Without doubt, Doe did not comply with the case plan for the first ten months. On the other hand, Doe did make some progress leading up to the termination hearing. It is well settled that the "magistrate may consider both past and current conduct when determining whether

---

[2] While in *Doe III* the father maintained a filthy house, had severe alcoholism and had struck his son, nothing in the *Doe III* decision suggests that the father had prior child protection involvement, other children that he was not caring or providing for, a history of repeated criminal activity and time spent in jail, a history of homelessness, a history of leaving his children in the care of others for substantial periods of time, and a history of missing or being consistently late for visits, all of which are present in this case.

grounds exist for terminating a person's parental rights." *Id.* "Where the magistrate takes into account all the evidence, this Court will not reweigh the evidence." *Id.* Based on the foregoing, we cannot conclude that the magistrate erred by ignoring Doe's recent progress and overemphasizing her past history. Contrarily, the magistrate properly considered all the evidence before it and based its decision on the entirety of the evidence.

### 2. Doe's pending Bingham County charges

As discussed above, at the time of the termination hearing, Doe had pending drug-related charges in Bingham County. Doe claims that the magistrate improperly identified Doe's pending charges as the "biggest issue" in the case. In its findings of fact, the magistrate court stated:

> Three months of stability out of a [lifetime] of instability does not convince the court it would be in the best interest of [M.H.] to return to [Doe's] home at this time. She has maintained a home for a little over a month. [Doe] has dug herself a deep hole to climb out of. The biggest issue is that she is facing returning to jail in the near future for a significant amount of time. This court can only hope that other judges will give her credit for the progress she is making in her own life now and that she will have the opportunity to continue to progress.

Doe claims that the statement, "[t]he biggest issue is that she is facing returning to jail in the near future for a significant period of time," shows the magistrate found that the biggest issue in *the case* was Doe's pending charges. Doe contends that her pending charges cannot be the basis of termination because it cannot be established by clear and convincing evidence that her charges will result in incarceration. Therefore, Doe contends that if this issue is the "biggest issue" in *the case* and yet it does not meet the clear and convincing standard, then the remaining evidence must be very insignificant and does not meet the requisite burden to terminate her parental rights. The State argues that Doe takes this comment out of context. The State contends that the magistrate was not implying that Doe's pending charges were the biggest issue in the case, but a big issue in whether Doe would be able to engage in parenting and whether M.H. would be able to return to Doe's home.

> This Court has previously stated:

> Under [I.C. §] 16-1602(25), a parent in prison for a substantial part of his children's lives clearly cannot provide any amount of "parental care and control, or subsistence, medical or other care or control necessary for [their] well-being." Further, an incarcerated parent is certainly "unable to discharge [his] responsibilities to and for" his children and, he is leaving his children without "the parental care necessary for [their] health, safety or well-being."

*Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 846, 852, 264 P.3d 953, 959 (2011) (citations omitted). Therefore, a parent's incarceration is a factor the magistrate can consider in the neglect analysis. Although Doe was not incarcerated at the time of the termination hearing, she did have pending felony charges in Bingham County that could result in incarceration. Further, in addition to the Bingham County charges, Doe faces incarceration in Bannock County for her third probation violation if she is found guilty of the Bingham County charges. Doe's probation officer testified that he would recommend that Doe's remaining sentence of 260 days be imposed if she is found guilty of the Bingham County charges.

Further, "magistrate courts have 'broad discretion in determining whether evidence is or is not too remote' to be relevant to a termination action." *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007) (quoting *In re Dayley*, 112 Idaho 522, 525, 733 P.2d 743, 746 (1987)). The prospect of incarceration, particularly in light of Doe's criminal record, is very real. The magistrate was under no obligation to disregard the possibility. Doe's incarceration would likely mean the loss of employment, housing, perhaps treatment, and certainly the ability to bond with and parent M.H. It is the uncertainty created by pending legal matters that necessitates a provision in the case plan requiring resolution of pending criminal charges. In essence, here, Doe seeks to turn the pendency of criminal charges to her favor by challenging the magistrate's expression of concern into a basis for reversal. Regardless of the outcome of the criminal proceedings, the magistrate properly considered the uncertainty which existed because of their pendency in analyzing what is best for the child.

### 3. M.H.'s potential return to Doe's care

Doe claims the magistrate erred in finding that M.H. would likely not be returned to Doe's care in the near future. Doe cites to the magistrate's conclusion that, "Given [Doe's] history, it is unlikely that she will ever be able to provide [M.H] with the care, safety, consistency and stability that she needs and has found in foster care." The magistrate's conclusion, however, is in the context of a comparison of the best interest of the child relative to Doe and foster care. Doe's argument that this conclusion represents a failure of the magistrate to consider her progress and improperly focus on her past is addressed above.

Doe also argues that the magistrate's conclusion is inconsistent with a prior statement by the magistrate. Following the permanency hearing, the magistrate issued an order that stated, in part, "At 15 months will not order reunification if mother hasn't worked on her number one

problem, sobriety." Doe claims that the magistrate's order after the permanency hearing left open the possibility that Doe would have M.H. returned if she worked on her sobriety. Since Doe had apparently been sober beginning in July 2012, Doe claims the conclusion that she will never be able to care for M.H. is error. As noted, the magistrate's conclusion does not state that she would never be able to care for M.H. Moreover, nothing about the order following the permanency hearing precluded the magistrate from ordering termination based upon analysis of all the evidence.

In addition, at the termination hearing Doe testified that her case manager told her that if the petition for termination was unsuccessful, M.H. would be returned to Doe within two weeks into December. Doe asserts that this testimony demonstrates that the case manager believed Doe would be capable of parenting M.H. by mid-December. The case manager refuted Doe's testimony and testified she never said what Doe claims she said. This testimony does not render any conclusion that M.H. should not be returned to Doe's care erroneous.

### 4. The magistrate's phrasing of the issue

In the findings of fact, the magistrate stated, "The question exists, 'If not for termination is mother ready to have [M.H.] back in her home?' The court finds that the answer is no." Doe claims that this is not a proper question that the magistrate should have asked because it limits the magistrate's options to either terminate parental rights or immediately place M.H. back into Doe's home. Doe asserts that the magistrate had a third option of allowing her more time to demonstrate that she is stable and ready to resume parenting. The State notes that the statement of the magistrate occurred in paragraph nineteen of twenty, does not suggest the magistrate felt limited in its options, and does not take away from the many appropriate findings of the magistrate.

Doe again relies on *Doe III* for support. In *Doe III*, this Court stated:

> It appears that the guardian, the social worker, and the court may have incorrectly viewed the court's only options at the termination hearing as either to terminate Father's parental rights on that day or return the children to Father on that day. That was not the choice, however. The only issue presented was whether Father's parental rights would be terminated at that time, not whether he was able to resume custody immediately. If termination had been denied, the children would have remained in foster care pending further proceedings. As Father urges on appeal, the court could have allowed additional time for Father to demonstrate whether he would be able to secure appropriate housing, improve his financial situation, and continue his commitment to sobriety; and his efforts could

15

have been aided by the Department resuming a role of working to facilitate reunification.

*Doe III*, 150 Idaho at 762, 250 P.3d at 813.  While Doe is correct that a magistrate has more options than to terminate or immediately place the child in the parent's custody, the magistrate's statement does not mean that the court did not understand its options or the statement by this Court in *Doe III*.  The magistrate followed the posed question with discussion about Doe's lifetime of instability, the many challenges she still faces, and the amount of time it would take to overcome them; while, at the same time, noting the three months of relative stability preceding the termination hearing.  After weighing these facts together, the magistrate concluded that "[t]he record shows too little progress too late."  The magistrate concluded that Doe "lacks the ability to provide [M.H.] with the support, consistency and stability that she needs."  Thus, the magistrate weighed the facts, considered Doe's recent progress, but determined that termination was appropriate.  This is, therefore, not the case as in *Doe III*, where the magistrate ignored all of the father's progress.[3]

### 5.  Alleged lack of help from the Department

Doe claims that the magistrate erred by not finding that the Department violated the magistrate's order to continue making reasonable efforts to reunite the family.  In a minute entry and order dated September 14, 2012, the magistrate ordered:

> 5.  The Court orders the case to remain as is.  Finds reasonable efforts towards reunification have been made.  At 15 months will not order reunification if mother hasn't worked on her number one problem, sobriety.
> 6.  The State will file TPR at 15 months if reunification has not occurred.

Doe argues that the Department failed to make reasonable efforts to reunite the family by: (1) failing to inspect her apartment; and (2) filing for termination prior to the fifteen-month time period discussed in I.C. § 16-1629(9).  As to Doe's first contention, testimony at the termination hearing indicated that the Department does not perform home inspections until the parent is approved for overnight visitation.  The case manager testified that Doe had not yet been

---

[3]    In *Doe III*, we noted that after the presentation of the evidence, Doe requested more time to complete his alcohol treatment, financial stability, and case plan, which the magistrate orally denied.  *Doe III*, 150 Idaho at 756, 250 P.3d at 807.  The Court ultimately agreed with the father's contention that the magistrate erred by not giving him more time.  *Id*. at 758, 250 P.3d at 809.  As the State points out, Doe did not request more time from the magistrate.

16

approved for overnight visits. However, the CASA volunteer testified that a home inspection should have been done. As to Doe's second contention, there is no requirement to wait fifteen months to file a petition for termination under I.C. § 16-2002(3)(a). Moreover, the hearing was conducted at the end of the fifteen-month period (although ostensibly one day short thereof) and the court's decision, issued after the fifteen-month period, considered all evidence up to the date of the hearing. Further, Doe fails to recognize that the magistrate's order made a factual finding that the Department did make reasonable efforts to reunite the family.

In sum, although there is evidence that Doe has made recent progress in completing her case plan, there is also substantial and competent evidence supporting the magistrate's finding that she neglected M.H. as defined by I.C. § 16-2002(3)(a). Further, "this Court is not in a position to reweigh the evidence and 'defer[s] to the trial court's unique ability to accurately weigh the evidence and judge the demeanor of the witnesses and take into account the trial court's superior view of the entire situation.'" *In re Doe*, 151 Idaho 356, 367, 256 P.3d 764, 775 (2011) (quoting *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007)). Therefore, we conclude that the magistrate did not error in terminating Doe's parental rights pursuant to I.C. § 16-2002(3)(a).[4]

## C.     Best Interest of the Child

The magistrate made findings of fact relating to M.H.'s life up to the point of termination. The magistrate found that M.H. was born to parents who abused drugs, were unable to stay sober, and had histories in the criminal justice system and the child protection system. Additionally, the magistrate found that M.H. "lived the life of homelessness." Doe also failed to provide M.H. with medical needs, such as immunizations and dental care. The magistrate found that while in foster care with her aunt, M.H. had experienced the most stable part of her life and has thrived. M.H. has "connected with the other children in the family" and the foster parents "have done a very good job of meeting the physical and emotional needs of [M.H.]." Further, the foster parents have every intention of adopting M.H., if termination is granted, and intend to allow M.H. to have ongoing contact with her relatives on both sides of the family. Based on the

---

[4]     Doe also argues that the magistrate erred in finding neglect under I.C. § 16-2002(3)(b) because the petition for termination was initiated one day prior to the fifteen-month time standard. We do not address this issue, having determined that substantial and competent evidence supports the magistrate's finding of neglect pursuant to I.C. § 16-2002(3)(a).

foregoing, and based on the findings of facts discussed above in the neglect section, the magistrate found that Doe lacked the ability to "provide [M.H.] with the support, consistency and stability that she needs." Accordingly, the magistrate found that termination was in M.H.'s best interest because it allowed her to be adopted into a family who could provide her with the stability and care she needs.

On appeal, Doe argues termination was not in the best interest of M.H. Doe contends that the magistrate should have allowed more time for reunification. Doe agrees that she and M.H.'s foster parent both have love and affection for M.H. However, Doe alleges that the foster parent, who is M.H.'s paternal aunt, would continue to have a relationship with M.H. even if termination was not granted. Additionally, Doe asserts that M.H. did not need to be immediately returned to her if termination was unsuccessful, but that it could have been a gradual process that would not result in harm to M.H. This would allow M.H. to maintain a healthy relationship with Doe and her foster parent. Doe again points to *Doe III* to support her assertion that it would have been in the best interest of M.H. to allow Doe more time to demonstrate her ability to parent. The State contends that termination was in the child's best interest because it provides the child with needed stability and certainty. The State argues that Doe's past history demonstrates that it is doubtful she could provide M.H. with stability. For support, the State points to *Idaho Dep't of Health & Welfare v. Doe (2011-18)*, 152 Idaho 644, 273 P.3d 685 (2012) (holding that termination was in the child's best interest because the father had a history of drug abuse, criminal activity, homelessness, and lacked a genuine interest in learning about the child's special needs and how to provide daily care for the child); and *Idaho Dep't of Health & Welfare v. Doe (2011-16)*, 152 Idaho 263, 270 P.3d 1048 (2012) (holding that termination was in the child's best interest because, in part, the mother had an extensive child protection history, had problems with housing and income, and the child thrived when in foster care).

Here, the magistrate considered the evidence to determine the likelihood of whether Doe's recent progress and alleged sobriety would continue despite her history and years of methamphetamine abuse. In *In re Doe (2009-19)*, 150 Idaho at 208, 245 P.3d at 960, the magistrate was faced with a similar issue in deciding whether a mother's recent progress would be "long lasting" in light of her history of methamphetamine use. In that case, the magistrate considered both the mother's past history of methamphetamine use and testimony of the mother's recent progress and concluded that the mother was unable to provide a stable home

environment for her child. *Id.* at 208-09, 245 P.3d at 960-61. The Idaho Supreme Court determined that the magistrate's decision was supported by substantial and competent evidence and affirmed the magistrate's decision. *Id.* Similarly, in the instant case, the magistrate properly considered Doe's substantial history of methamphetamine abuse as well as her recent progress and concluded that Doe was unable to "provide [M.H.] with the support, consistency and stability that she needs." Further, M.H. was thriving in the stable environment provided by her aunt. Based on the foregoing, we conclude that the magistrate's finding that termination was in the best interest of M.H. is supported by substantial and competent evidence. Therefore, the magistrate did not err by finding that termination of Doe's parental rights was in the best interest of M.H.

## III.

## CONCLUSION

Substantial and competent evidence supports the magistrate's finding of neglect under I.C. § 16-2002(3)(a) and that termination was in the best interest of M.H. Therefore, the magistrate's order terminating Doe's parental rights to M.H. is affirmed.

Chief Judge GUTIERREZ and Judge LANSING **CONCUR.**