IN THE COURT OF APPEALS OF THE STATE OF IDAHO

**Docket No. 48706**

| | |
|---|---|
| In the Interest of:  John Doe I, A Child Under Eighteen (18) Years of Age. | ) ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) |
| | ) |
| Petitioner-Respondent, | ) |
| | ) |
| v. | ) |
| | ) |
| JANE DOE (2021-13), | ) |
| | ) |
| Respondent-Appellant. | ) ) |

Filed:  August 16, 2021

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Calvin H. Campbell, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Marilyn Paul, Chief Twin Falls County Public Defender; Laura Z. O'Connell, Deputy Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Boise, for respondent.

BRAILSFORD, Judge

Jane Doe (Mother) appeals from the judgment terminating her parental rights to her minor child, C.S.  Mother argues the magistrate court erred by concluding that she neglected C.S. and that the termination of Mother's parental rights is in C.S.'s best interests.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In April 2019, law enforcement declared C.S. in imminent danger based on concerns about an unstable home environment, drug use, child abuse, and Mother's mental health issues.

1

At the time, C.S. was approximately fifteen months old, and Mother and C.S. both tested positive for methamphetamine.

In May 2019, the magistrate court entered an order following an adjudicatory hearing vesting C.S.'s legal custody in the Idaho Department of Health and Welfare. In June, the court adopted a case plan with tasks for Mother to perform. These tasks required, for example, that Mother complete a mental health assessment and follow all recommendations; complete a substance abuse assessment, follow all recommendations, and submit to random drug testing; demonstrate the ability to provide for C.S.'s financial needs; maintain safe, stable, sanitary, and drug-free housing; complete a parenting class and demonstrate learned skills; and manage and attend C.S.'s medical appointments.

Beginning in February 2020, Mother was incarcerated for ten months for repeatedly violating a no-contact order. In May 2020, the Department petitioned to terminate Mother's parental rights, and the magistrate court scheduled a termination hearing for October. Mother moved for a continuance, however, because she remained incarcerated in October. Ten days after Mother's release from incarceration, the court held a termination hearing on December 30.

In March 2021, the magistrate court issued a written decision terminating Mother's parental rights. The court concluded that Mother neglected C.S. by failing to perform the case plan[1] and that the termination of Mother's parental rights is in C.S.'s best interests. Mother timely appeals.[2]

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States

---

[1] The magistrate court also generally concluded that "on the whole, Mother has neglected [C.S.] through [Mother's] actions and failing to complete her case plan," but the court does not cite to any specific statutory provision to support a conclusion that Mother neglected C.S. through any conduct other than the failure to complete the case plan, and the court's analysis is limited to Mother's failure to perform the case plan. Also, the court states without analysis that the facts "indicate" Mother consented to the termination of her parental rights. No evidence, however, supports this statement.

[2] The magistrate court also terminated the parental rights of C.S.'s father. The father's rights, however, are not the subject of this appeal.

Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

### III.

### ANALYSIS

#### A. Neglect

Mother challenges the magistrate court's conclusion that she neglected C.S. Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and

3

a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

On appeal, Mother asserts the magistrate court erred by concluding she neglected C.S. In support, Mother argues she "did everything she could do to maintain a relationship with C.S." while Mother was incarcerated, including "making phone calls, writing letters and sending pictures" and attempting to have video visits. Further, she argues she "has made great progress" in addressing her mental health and her drug addiction issues. Mother's arguments ignore, however, the basis for the magistrate court's conclusion that she neglected C.S., namely that Mother failed to complete her case plan. *See* I.C. § 16-2002(3)(b) (defining "neglected" to include failing to comply with case plan).

Substantial and competent evidence supports the magistrate court's finding that Mother failed to complete the case plan. For example, the evidence shows that although Mother completed "intensive outpatient" drug treatment, she did not continue with relapse prevention treatment. During the case's pendency, she tested positive for drugs ten times and missed six tests. Mother did not follow her mental health assessment's recommendations or obtain domestic violence treatment. Further, Mother failed to demonstrate an ability to provide for C.S.'s financial needs. Although Mother reported twenty-seven different places of employment, the Department was only able to verify two brief, part-time jobs at fast-food restaurants. Mother also failed to maintain safe, stable, sanitary, and drug-free housing. She reported numerous housing arrangements, rarely stayed any place longer than a month, failed to provide the necessary information for approval of her roommates, and was living at an extended stay hotel at the time of the termination trial.

4

The record also shows that Mother only attended one of C.S.'s medical appointments and that appointment went poorly. According to a social worker's testimony, during the appointment Mother "was very angry and agitated and would not let the doctor perform the necessary tasks," and as a result, the provider specifically requested that the appointment be rescheduled and that Mother not be in attendance. Based on this evidence and on the fact that C.S. had been in the Department's custody continuously for eighteen months at the time of the termination hearing, we conclude that clear and convincing evidence supports the magistrate court's conclusion that Mother neglected C.S. by failing to complete the case plan. *See* I.C. § 16-2002(3)(b) (providing for termination for failure to comply with case plan while child was in Department's custody for fifteen of most recent twenty-two months).

Contrary to Mother's assertion, this case is distinguishable from *Doe*, 137 Idaho 758, 53 P.3d 341. In that case, Doe was serving a prison term set to expire in December 2000 when his son was born in 1997. *Id.* at 759, 53 P.3d at 342. "[I]n 1999 blood tests established that Doe was the father of the child." *Id.* at 761, 53 P.3d at 344. In May 2000, the district court affirmed the magistrate court's decision terminating Doe's parental rights based on abandonment and neglect. *Id.* at 759-60, 53 P.3d at 342-43. Doe appealed this decision to the Idaho Supreme Court. On appeal, Doe acknowledged he had been in prison the child's entire life and had never seen him. *Id.* at 761, 53 P.3d at 344. He argued, however, that the magistrate court failed to consider his desire to maintain his parental rights and his efforts to maintain contact with the child by sending letters to the child's legal custodian expressing Doe's interest in the child; by sending the child Christmas gifts, a letter, a picture, and a drawing; and by calling the Department caseworker numerous times. *Id.* The Court concluded that Doe's effort to have a relationship with the child was "severely restricted" and that the Department "did little or nothing to assist in that effort." *Id.* at 762, 53 P.3d at 345. As a result, the Court remanded the case for further proceedings including consideration of "evidence of Doe's conduct since his release" from prison. *Id.*

Unlike *Doe*, Mother was not incarcerated for C.S.'s entire lifetime or during the entirety of this case's pendency. Rather, from the time the court adopted the case plan in June 2019 until February 2020 when Mother was incarcerated her opportunities to perform the plan were not restricted. Additionally, Mother does not argue and no evidence supports a finding that the Department did little or nothing to assist Mother in performing the plan, as in *Doe*. Indeed, Mother acknowledged during the termination hearing that before going to prison she "didn't try as hard as" she could have to perform the case plan and she "could have tried harder."

5

Finally, the record belies Mother's argument that she has made "great progress" addressing her mental health and drug addiction issues. Among other things, Mother randomly tested positive for drugs numerous times, failed to obtain preventative relapse treatment, and failed to follow the mental health assessment's recommendations. Although Mother may have made some progress after her release from incarceration, we cannot conclude the magistrate court erred by basing its decision on Mother's past failures. *See Idaho Dep't of Health & Welfare v. Doe (2013-05)*, 155 Idaho 145, 154, 306 P.3d 230, 239 (Ct. App. 2013) (concluding court did not err by ignoring recent progress and overemphasizing past history).

**B.     Best Interests**

Mother also challenges the magistrate court's conclusion that the termination of her parental rights is in C.S.'s best interests. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

In support of her assertion that the termination of her parental rights is not in C.S.'s best interests, Mother focuses on her efforts after her release from incarceration, most of which efforts occurred after the termination hearing. Mother argues that since being released from incarceration, she is in drug treatment, is receiving mental health medication, has started a new job, and has found appropriate housing. Mother bases this argument on an affidavit that she filed after the termination hearing. The magistrate court considered that affidavit in reaching its decision. According to the court's March 5, 2021, status conference minutes, the court granted "the consideration of the

affidavit and [allowed] it into evidence." Regardless, the court concluded that the termination of Mother's parental rights is in C.S.'s best interests.

Substantial and competent evidence supports this conclusion. For example, Mother acknowledged during the termination hearing that she had a history of methamphetamine use; she repeatedly tested positive for drugs during the case's pendency; and she failed to obtain preventative relapse treatment. She also failed to improve her situation by following the recommendations of her mental health assessment. She failed to verify employment sufficient to provide for C.S.'s financial needs and did not provide child support for him while he was in the Department's custody. Further, Mother failed to establish acceptable housing, and she was incarcerated.

Meanwhile, the evidence shows C.S. has improved while in foster care. For example, witnesses testified that C.S. is "doing great" and has made "significant," "amazing," and "immense[]" improvements. Mother, likewise, acknowledged C.S. has made "tremendous improvements" while in foster care. Given this evidence and the fact that Mother has a lengthy history of child protection cases with the Department involving her four other children--none of whom are in her custody--we conclude the magistrate court did not err by concluding the termination of Mother's parental rights is in C.S.'s best interests.

Finally, Mother's argument that "everyone agrees [she] loves [C.S.]" does not overcome the magistrate court's conclusion about C.S.'s best interests. "[L]ove does not always translate into the ability to discharge parental responsibilities." *Idaho Dep't of Health & Welfare v. Doe* (2014-17), 157 Idaho 694, 703, 339 P.3d 755, 764 (2014).

## IV.

## CONCLUSION

We hold that substantial and competent evidence supports the magistrate court's conclusion that Mother neglected C.S. and that terminating Mother's parental rights is in C.S.'s best interests. Accordingly, we affirm the judgment terminating Mother's parental rights.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.

7