# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 44537

| | |
|---|---|
| In the Matter of the DOE CHILDREN, Children Under Eighteen Years of Age. ) | |
| IDAHO DEPARTMENT OF HEALTH and WELFARE, )<br><br>)<br>Petitioner-Respondent, )<br><br>)<br>v. )<br><br>)<br>JOHN DOE (2016-44), )<br><br>)<br>Respondent-Appellant. )<br><br>) | 2017 Unpublished Opinion No. 317S<br><br>Filed: February 23, 2017<br><br>Stephen W. Kenyon, Clerk<br><br>THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY<br><br>SUBSTITUTE OPINION THE COURT'S PRIOR OPINION DATED JANUARY 13, 2017, IS HEREBY WITHDRAWN |

Appeal from the Magistrate Division of the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Kent J. Merica, Magistrate.

Judgment terminating parental rights, affirmed.

Paige M. Nolta, Lewiston, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Marcy J. Spilker, Deputy Attorney General, Boise, for respondent. Marcy J. Spilker argued.

---

GUTIERREZ, Judge

John Doe appeals from the magistrate's judgment terminating John's parental rights to his two minor children. For the reasons set forth below, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

John Doe and his wife, Jane Doe, have an extensive history of drug abuse and have been involved in child protection proceedings in the past. In February 2015, the Department of Health

1

and Welfare (Department) received reports indicating that neither John nor Jane were in compliance with the terms of their probations and that the three children in John and Jane's care were unsafe. These three children are the biological children of Jane, but only two are the biological children of John; the biological father of Jane's oldest child is unknown.

On February 20, 2015, the Department filed a petition asking the magistrate to determine whether the children were within the jurisdiction of the Child Protection Act, alleging the children were neglected and lacking a stable home environment. Additionally, the petition asked the magistrate to remove the children from John and Jane's home and place the children into the temporary legal custody of the Department. The magistrate entered an order granting the Department's requests, and the children were immediately removed from John and Jane's care and placed in shelter care. The children remained in shelter care until an adjudicatory hearing was held, at which point the magistrate found it was in the children's best interests to remain in shelter care. The Department prepared a written case plan for both John and Jane, and the magistrate approved the proposed plan on April 29, 2015.

In August 2015, the magistrate held a permanency hearing on the child protection case, at which time the Department requested the approval of a modified case plan to pursue relative adoption rather than reunification. In its subsequent permanency plan order, the magistrate ordered the Department to file a petition to terminate parental rights within thirty days. The Department then filed a petition to terminate both John and Jane's parental rights to the children in September 2015, followed by an amended petition approximately two weeks later. The magistrate scheduled the termination trial for December 2015.

For reasons unclear from the record, the parties stipulated to postponing the December trial until February 2016. Then, the parties again stipulated to postponing the February schedule as Jane was pregnant at the time and the trial would be too close to her due date. The magistrate rescheduled the termination trial for May 2016.

In February 2016, Jane gave birth to a child fathered by John. The Department filed an amended petition under the Child Protection Act to add the new baby to the existing child protection order. The baby was placed in shelter care with the other three children. The magistrate then held the appropriate shelter care and adjudicatory hearings. Ultimately, in May 2016, after the magistrate approved the Department's proposed case plan regarding the baby, the

parties stipulated to sever the baby's and the children's child protection proceedings. John and Jane's parental rights to the baby are not at issue in this appeal.

Meanwhile, in March 2016, the Department filed a second amended petition for termination of the parent-child relationship between the three older children and both John and Jane. This amended petition alleged that both parents neglected the children and divided the grounds for termination into four separate counts. Count IV was directed solely at Jane and thus is not at issue in this appeal.

Count I: The children are neglected as defined in [I.C. §§ 16-1602(31)(b)];[1] 16-2002(3)(a) and 16-2005(1)(b) because they lack proper support or parental care necessary for their health, morals, and well-being, to-wit: [John and Jane] have shown the inability to maintain safe and stable [sic] for their children. Neither parent is able to demonstrate the ability to safely parent their children when they are abusing substances, and it appears that they are still unable to maintain control of their addictions despite all the services they have been offered and that they have completed throughout the past five (5) years of Child Protection Involvement.

Count II: The children are neglected as defined in I.C. §§ 16-2002(3)(b) and 16-2005(1)(b). The parents have failed to comply with the Court's orders or the case plan in a Child Protective act case.

Count III: The parents have neglected the children. The children are neglected as they are without the proper parental care and control, or subsistence, education, medical or other care and control necessary for their well-being because of the conduct or omission of their parents, guardian, or other custodian or their neglect or refusal to provide them as follows: [John and Jane] have a significant substance abuse history. [John and Jane] have not engaged in any support services recommended by Department staff that has been identified to help them successfully establish a safe life to parent [the children].

The trial for terminating the parental rights of John and Jane as to the children commenced on May 10, 2016. On the following day, when the trial was not concluded, the magistrate scheduled its continuation for July 2016. The trial then continued from July 6 until July 8. During the five days of trial, the magistrate heard testimony from numerous individuals involved in various aspects of the case plan, the children's lives, or the parents' lives. These individuals included the children's foster parents; the guardian ad litem; the parents' probation officer; a police officer; teachers and administrators from treatment facilities; as well as

---

[1] Although the petition cited to I.C. § 16-1602(28)(b), this code provision has since been renumbered to I.C. § 16-1602(31)(b).

3

Department employees including visitation supervisors, social workers, and both current and past case managers. These individuals testified regarding the parents' history of drug abuse and relapse; the parents' participation in drug treatment programs; observations of the parents' home; opinions regarding the parents' ability to discipline and supervise the children; the children's extensive behavioral and developmental issues; and the ongoing needs of the children. At the conclusion of trial, the parties were instructed to file their closing arguments by August 12.

The magistrate then held a hearing on October 3, 2016. At this hearing, the magistrate expressed that he had experienced software failure resulting in the permanent loss of a significant amount of his written work. The magistrate indicated he would instead enter his findings of fact and conclusions of law orally on the record. He stated, "This will constitute the only record of the same. The court will not reduce the following to writing, and I'm doing that in the--for the sake of expediency for the parties." The magistrate proceeded to verbally pronounce detailed findings of facts and conclusions of law from the bench.

On the same day, the magistrate entered a written judgment terminating the parent-child relationships between John and Jane and the children. In this written judgment, aside from stating that "it is in [the children's] best interests for the parental rights . . . to be terminated," the judgment did not include any specific findings of fact or conclusions of law. Then, two days after entry of this written judgment, the magistrate entered an order titled, "Amended Findings of Fact, Conclusions of Law, and Order." This order concluded by stating that John and Jane's parental rights were being terminated based upon (1) their failure to follow and complete the case plan, as alleged in Count II, and (2) their conduct which resulted in the children being without proper parental care and control, as alleged in Count III. The magistrate found that the Department did not demonstrate that the parents were unable to discharge their parental responsibilities, as alleged in Count I, and did not terminate on this basis. The magistrate entered a corresponding amended judgment reiterating its conclusion that termination was in the children's best interests and that the parent-child relationships were terminated.

Although the magistrate treated the termination petition of both parents as a consolidated case, John and Jane each separately appealed the magistrate's judgment. However, on review, this Court concluded that the magistrate erred by not entering written findings of fact and conclusions of law. We remanded both cases back to the magistrate with instructions to enter

4

written findings of fact and conclusions of law and a corresponding amended judgment.[2] The subsequent written findings of fact and conclusions of law entered by the magistrate reiterate its previous findings that the children were neglected pursuant to Counts II and III of the second amended petition termination.

In consideration of the submitted magistrate's written findings of fact and conclusions of law, John was given an opportunity to submit supplemental briefing for the Court's consideration. We now consider the merits of John's appellate argument that the magistrate erred in terminating John's parental rights.

## II.

## ANALYSIS

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). *See also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights

---

[2] Our analysis on this issue can be found in the published opinion involving the termination of Jane's parental rights, published simultaneously to this opinion.

be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

**A.      Finding of Neglect**

Here, the magistrate terminated John's parental rights on the basis of neglect, finding that termination was in the best interests of the children.[3] Specifically, the magistrate found clear and convincing evidence that John neglected his children pursuant to the allegations in Count II and III of the second amended termination petition. Because we conclude that John neglected his children pursuant to the grounds alleged in Count III, we need not address John's contentions regarding the other grounds considered by the magistrate.[4] *See State, Dep't of Health & Welfare v. Doe*, 149 Idaho 409, 413, 234 P.3d 733, 737 (2010).

Count III alleged that John neglected his children by failing to provide the "proper parental care and control, or subsistence, medical or other care or control necessary for his or her

---

[3]      John does not challenge the magistrate's finding that termination of his parental rights was in the best interests of the children, thus we do not address that issue.

[4]      Accordingly, we do not address John's argument regarding the amount of time the children were in the Department's legal custody for purposes of Idaho Code Section 16-2002(b)(3).

well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them." Because this language tracks with I.C. § 16-1602(31)(a),[5] the magistrate considered whether there was clear and convincing evidence of neglect pursuant to this provision. The magistrate found that John neglected his children due to John's extensive history of drug abuse, repeated law and probation violations, failure to provide stable housing, failure to engage in and maintain counseling and treatment, failure to complete his case plan, and failure to keep the children safe and provide proper discipline.

John's arguments on appeal effectively urge this Court to disregard John's unfavorable history. John does not dispute his history of substance abuse and repeated relapses following completion of treatment programs; his numerous criminal and probation violations; his failure to maintain stable housing and employment; and his initial failures to comply with his case plan. Instead, he argues that because he has been clean and sober since June 2015, has had no probation violations since December 2015 and currently has secure housing and a job, the magistrate's findings of deficiencies in these areas are erroneous.

It is well-settled that a court may properly consider the history of the family both prior to and at the time of State intervention in determining whether clear and convincing evidence of neglect exists. *State v. Doe*, 144 Idaho 839, 843, 172 P.3d 1114, 1118 (2007). A court is not constrained to considering only the conditions as they exist at the time of the hearing. *Id.* A court may also consider a parent's performance on a case plan when considering whether that parent has neglected their children pursuant to I.C. § 16-2002(3)(a). *In re Doe*, 151 Idaho 356, 365, 256 P.3d 764, 773 (2011).

Here, the magistrate acted well within its discretion in considering John's recent improvements in addition to his history of drug and alcohol abuse, incarcerations, and neglectful conduct. The magistrate was not limited to considering only the brief snippet of time immediately preceding the termination hearing in determining whether John had failed to provide the proper parental care and control necessary for his children's well-being. In John's favor, the magistrate considered John's recent improvements. The magistrate commended John,

---

[5] Idaho Code Section 16-1602(31)(a) provides, in relevant part: "'Neglected' means a child . . . [w]ho is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents . . . or their neglect or refusal to provide them."

7

stating: "[John] appears to be on the path to recovery to being a law abiding and contributing member of the community." However, the magistrate found it significant that John did not begin his turn around until after termination efforts were already underway. Where a parent's improvements in a child protection case begin only after the initiation of termination proceedings, such efforts are often too late. *See, e.g.*, *Doe*, 151 Idaho 356 at 256 P.3d at 774; *Idaho Dep't of Health & Welfare v. Doe*, 155 Idaho 145, 153, 306 P.3d 230, 238 (Ct. App. 2013). Ultimately, the magistrate was not persuaded that John's recent improvements were sufficient to mitigate his history of neglectful conduct.

John also argues that the cumulative testimony regarding his inability to discipline the children and keep them safe is merely subject to interpretation. John suggests that witness testimonies merely show a "laid-back father, but not one that endangers [the children]." Acknowledging that the Department had concerns regarding John's parenting, he nonetheless contends that "there was no evidence that [he] does anything that other parents do not do." We disagree with John's assessment of the evidence presented for the magistrate's consideration.

During trial, the magistrate heard from several individuals who gave specific examples of John's demonstrated inability to keep his children safe. First, the magistrate heard from the woman tasked with providing parenting instruction to John. Over the course of 22 weeks, this parenting coach attended over 33 sessions with John and his children, spending over 140 hours together. During trial, she testified to witnessing numerous incidents of John being wholly unaware of the location or activities of his children, both in public locations as well as in and around the home. She also witnessed numerous incidents where John was simply unable to control his children's behavior, which placed them in dangerous situations. She expressed her opinion that John was unable to appropriately discipline the children, attesting to incidents of inconsistently applied discipline and inappropriate discipline. Finally, she testified to John's eventual unwillingness to accept instruction. She stated that during the first sessions, John was receptive and polite; but his receptiveness eventually faded over time until John reached a point where he refused to accept instruction and would yell at her and the kids when frustrated. The magistrate also heard testimony from the guardian ad litem, who attested to chaotic interactions whenever the children were under John's supervision and that John consistently failed to set boundaries for the children's behavior. The magistrate also heard testimony from the Department case worker who indicated that John displayed a lack of supervision and lack of

knowledge regarding how to meet the developmental needs of his children and how to administer consistency and discipline. She testified that John was not receptive to her suggestions regarding how to correct problems she observed during his visits with the children. Finally, the magistrate heard from the foster parents who testified not only to their observations of John's parenting, but also to the unsafe condition of home. Therefore, we conclude that the magistrate's finding that John was unable to provide for the safety and security of his children is supported by substantial and competent evidence, and any inferences drawn from the testimony regarding his parenting abilities are reasonable based upon the evidence presented during trial.

To the extent John's arguments ask this Court to reweigh the evidence already considered by the magistrate, we are unwilling to do so. This Court does not reweigh evidence, but instead defers to the magistrate's "unique ability to accurately weigh the evidence and judge the demeanor of the witnesses and take into account the trial court's superior view of the entire situation." *In re Doe*, 156 Idaho 103, 108, 320 P.3d 1262, 1267 (2014) (internal quotations and citations omitted). The magistrate's findings will be deemed competent, despite possibly conflicting evidence, so long as they are supported by substantial evidence. *Id.*

Moreover, to the extent that John takes issue with the accuracy of several findings by the magistrate, we are not persuaded that any purported error is material to the magistrate's finding of neglect. Even where a finding of fact is in error, this Court will disregard the error unless it affects the substantial rights of the parties. I.R.C.P. 61; *Doe I v. Doe*, 138 Idaho 893, 906, 71 P.3d 1040, 1053 (2003). John points to the following findings of the magistrate as being erroneous: the number of times the children have been in John's sole custody; whether the children were legally required to be attending school while in his care; the exact date the parents were in Nevada; and who was locked out of the building during the supervised visit. Although addressed by the magistrate, we cannot say that any of these purported errors, whether considered in isolation or cumulatively, were material to the magistrate's finding of neglect. Thus, this Court will disregard these purposed errors.

After careful review of the record, we conclude that substantial and competent evidence supports each of the magistrate's findings regarding John's failure to provide the proper care and control necessary for his children's well-being. In support of finding neglect, the magistrate heard the following undisputed evidence: John had been involved with the Department off-and-on since 2011; in that time, John had relapsed on methamphetamine several times, violated

9

parole, violated the law, been incarcerated, relinquished control of his children to the foster family due to feeling overwhelmed, exposed the children to dangerous living conditions, and failed to maintain much-needed counseling services for the children. The cumulative testimony before the magistrate constituted substantial and competent evidence demonstrating John's failure to provide the proper care for his children.

**B.     Due Process Violations**

Finally, we address John's arguments that various circumstances of his termination proceeding ran afoul of his constitutional right to due process. John first contends his due process rights were violated when the magistrate allowed the Department to file a petition for termination before John had an opportunity to "really work" on his case plan. He argues that by allowing the Department to petition for termination less than two months after the case plan was filed, the magistrate interfered with John's "right to the care, custody, and control of his children by setting up a confrontational atmosphere with [the Department] and the foster parents." Not only does John fail to cite any authority in support of this contention, but contrary authority exists establishing that the Department was justified in filing a petition at that time. *See Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 498, 506-07, 260 P.3d 1169, 1177-78 (2011) (holding the Department may file for termination at any point following the placement of a child into its legal custody). The Department may file a petition to terminate parental rights after a court has placed the child in the legal custody of the Department. *Id. See also* I.C. § 16-1624. Here, the Department properly filed the termination petition after the children were in the Department's legal custody. Thus, the timing of the filing did not violate John's due process rights.

John next argues the magistrate improperly considered allegations not contained within the second amended petition for termination. He cites to I.C. § 16-2006(h) and Idaho Rules of Civil Procedure 8(a)(2) and 8(d) to support his argument. Idaho Code Section 16-2006(h) states that "the petition for the termination of the parent and child relationship shall include, to the best information and belief of the petitioner . . . the grounds on which termination of the parent and child relationship is sought." The Idaho Rule of Civil Procedure provisions John cites to require that a pleading include concise claims showing the pleader is entitled to relief. *See* I.R.C.P. 8(a)(2) and 8(d)(1), (2). Not only do these authorities fail to support his allegation that the magistrate was not permitted to consider allegations outside of the petition, John goes on to

effectively negate the applicability of these citations by acknowledging that "although the State did state the claims on which the Court could grant relief, the State did not prove the claims as alleged."

We disagree with John's conclusory assertion that the Department did not prove the claims as alleged. The second amended petition clearly alleged neglect as the grounds for relief, repeatedly stating "the children are neglected" and "the parents have neglected the children." As our analysis above indicates, the Department proved neglect as alleged in Count III by substantial and competent evidence. Moreover, John again fails to provide any authority as to why the magistrate's consideration of allegations not specifically contained within the petition violated John's right to due process. *In re Doe Children*, 160 Idaho 824, 836, 379 P.3d 1094, 1106 (2016) (declining to consider due process claim unsupported by argument or authority). Because this claim is not supported, we do not consider it.

Lastly, John argues that his due process rights were violated because the Department did not provide reasonable efforts under the circumstances regarding Intensive Family Services. John raises his dissatisfaction with the Department's reunification efforts for the first time on appeal. The Idaho Supreme Court has made it clear that in termination cases, claims of error raised for the first time on appeal will not be considered. *Doe*, 156 Idaho at 687-88, 330 P.3d at 1045-46. Moreover, the issue of whether the Department has made reasonable efforts at reunification is not part of the magistrate's analysis when terminating parental rights on the grounds of neglect. *See* I.C. § 16-2002(3)(b)(i)-(ii); *In re Doe*, 156 Idaho 682, 688 n.3, 330 P.3d 1040, 1046 n.3 (2014). Because John did not raise this issue below, we decline to address it on appeal.

In sum, although there is evidence that John has recently made improvements by meeting the demands of the Department in order to reunite with the children, there is also substantial and competent evidence that John has neglected his children as defined by I.C. § 16-1602(31)(a). Therefore, we hold that the magistrate did not err in finding neglect pursuant to I.C. § 16-2002(3)(a).

### III.
### CONCLUSION

There was clear and convincing evidence that John neglected his children by failing to provide the proper parental care and control for their well-being.  Accordingly, we affirm the magistrate's judgment terminating John's parental rights to his two minor children.

Chief Judge GRATTON and Judge MELANSON **CONCUR**.