IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39285

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JANE (2011-17) DOE. | ) ) ) ) ) | 2012 Opinion No. 24 Filed: April 25, 2012 Stephen W. Kenyon, Clerk |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) ) | |
| Petitioner-Respondent, | ) ) | |
| v. | ) ) | |
| JANE (2011-17) DOE, | ) ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. Mick Hodges, Magistrate.

Order terminating parental rights, affirmed.

Clayne S. Zollinger, Jr., Rupert, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Twin Falls, for respondent.

_____

GUTIERREZ, Judge

Jane Doe (Mother) appeals from the magistrate's order terminating her parental rights to her child. We affirm.

## I.

## FACTS AND PROCEDURE

When Mother gave birth to her child on April 6, 2010, Mother admitted to using methamphetamine, both intravenously and by smoking, during the pregnancy. Because it was suspected the child would test positive for methamphetamine, a child protective case was filed on the date of birth. After showing positive test results for methamphetamine, the child was

1

removed to foster care and Mother was charged with felony injury to child. Mother later pled guilty to the charge and was placed on probation.

A shelter care hearing was held on April 8, 2010, at which time the child was formally placed into protective custody under the Child Protective Act (CPA). The magistrate held an adjudicatory hearing on April 28, 2010, and issued a decree two weeks later, finding the court had jurisdiction under the CPA and ordering that legal custody be vested with the Idaho Department of Health and Welfare (Department). A case plan was prepared and filed on May 27, 2010, for both Mother and the child's father. As to Mother, the case plan included provisions, among others, that Mother would (1) address her substance abuse issues, (2) address her possible mental health issues, (3) gain full-time employment, and (4) obtain adequate housing before reunification with the child would occur.

Mother initially obtained funding and started outpatient treatment at a family services organization. However, Mother reported being uncomfortable at that organization and was discharged from the treatment program for failing to attend. Shortly thereafter, she admitted to the Department social worker that she had used methamphetamine. An assessment of Mother, completed around that time, also reported on Mother's continued use of methamphetamine--she even went to the assessment while high--despite the child having tested positive for methamphetamine at birth, an open child protective case, and other negative consequences associated with her drug use. The assessment suggested an intensive inpatient treatment program, as well as coordinating services with the justice system. Similarly, the child's guardian ad litem indicated concerns about Mother's failure to adhere to her case plan in any manner whatsoever in the four months since the child's birth and Mother's constant stream of excuses as to why she was not following recommendations in the case plan. Thereafter, Mother started treatment at a different substance abuse center in September 2010 and successfully completed the center's inpatient program.

At the six-month review in October 2010, the child's parents stipulated that the child would remain in the State's custody. A Department social worker assigned to Mother's case expressed that the prognosis for reunifying Mother with the child in this case was poor because of Mother's limited efforts to meet the requirements of her case plan and continued drug use. After Mother was released from the inpatient drug treatment facility, the guardian ad litem also reported Mother continued to use methamphetamine and had only limited participation in any

2

other substance abuse treatment. For example, Mother had missed over half of the scheduled sessions with the second outpatient treatment center from which she was supposedly receiving help. While Mother was making some progress in the sessions she did attend, she seemed ambivalent about her substance abuse recovery and made numerous excuses for missing other scheduled sessions. Additionally, Mother had been coming to visitations with the child while high. In fact, Mother tested positive for methamphetamines and amphetamines in November 2010. Not long afterwards, Mother was arrested and remained incarcerated from December 27, 2010, to January 15, 2011, for failing to appear at a court date with the drug court. After her arrest, Mother was also terminated from the second outpatient treatment center for failing to attend.

A review hearing was held on February 23, 2011. As a result of the magistrate's order following that hearing, reunification efforts were ceased and the State began focusing on termination of both the father and Mother's parental rights. On March 29, 2011, Mother was again arrested for probation violations after admitting to methamphetamine use just two to three weeks prior. On April 12, 2011, while Mother was still incarcerated, the Department filed a motion to terminate the parental rights of both Mother and the child's father. Mother was released from custody on July 28, 2011, and the termination hearing was held on August 13, 2011. The father consented to the termination of his parental rights; Mother contested the termination and went to trial.

At Mother's trial on September 1, 2011, evidence was presented that Mother, during her four-month incarceration, attended bi-weekly Narcotics Anonymous classes, participated in a daily outpatient therapy program, and regularly attended church meetings. She also completed a twelve-week course in anger management. In the roughly one month between her release and the trial, Mother continued to participate in the outpatient therapy program, was in a second anger management course, and attended general education classes to work towards her high school diploma. She also reported she was participating in personal and group counseling. Though not yet employed, Mother had been accepted by a rehabilitation facility and was planning to attend job training and mental awareness training to help her gain employment. Mother had also submitted to drug tests three times per week since her release from jail and had clean results during that time frame. The magistrate acknowledged Mother's latest efforts to meet her case plan, but determined that terminating the Mother's parental rights was in the best

interests of the child. An order terminating Mother's parental rights was entered on September 29, 2011. Mother timely appeals.

## II.

## STANDARD OF REVIEW

The United States Supreme Court has held that a parent's interest in maintaining a relationship with his or her child is a fundamental liberty interest protected by the Fourteenth Amendment of the United States Constitution. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Quilloin v. Walcott*, 434 U.S. 246, 255-56 (1978). *See also In re Doe*, 146 Idaho 759, 761, 203 P.3d 689, 691 (2009). Concordantly, the Idaho Legislature has, in the CPA, directed that "the state of Idaho shall, to the fullest extent possible, seek to preserve, protect, enhance and reunite the family relationship." Idaho Code § 16-1601. Likewise, the Termination of Parent and Child Relationship Act states, "Implicit in this chapter is the philosophy that wherever possible family life should be strengthened and preserved . . . ." I.C. § 16-2001(2).

Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by "clear and convincing evidence." *Santosky*, 455 U.S. at 768-69. *See also* I.C. § 16-2009; *Doe*, 146 Idaho at 761-62, 203 P.3d at 691-92; *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion.[1] *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id*. The Idaho Supreme Court has also stated, however, that the substantial evidence test requires a greater quantum of evidence in cases where the trial court

---

[1] Here, our review rests on reports and examinations relevant to Mother and the child only to the extent those records were admitted as exhibits into evidence and on facts established through witness testimony at trial. Although the district court gave a blanket judicial notice to all records and files pertinent to this case, the request by counsel was insufficient to meet the requirements of Idaho Rule of Evidence 201 because the general request failed to identify specific documents and the parties did not stipulate to have the child protection case documents admitted in accordance with Idaho Juvenile Rule 48. *See also* I.C. § 16-2009 (providing a court's finding in a termination of parental rights case must be based on clear and convincing evidence under rules applicable to the trial of civil causes).

4

finding must be supported by clear and convincing evidence, than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. In re *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## DISCUSSION

### A.  Grounds for Termination

A court may terminate a person's parental right if it finds (1) a statutory ground exists for termination; and (2) termination is in the best interests of the child. I.C. § 16-2005; *Doe v. Roe*, 133 Idaho 805, 810, 992 P.2d 1205, 1210 (1999). One statutory ground for termination is finding the child is neglected. I.C. § 16-2005(1)(b). A neglected child is defined, in relevant part, as a child:

> (a) Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them; . . . or
> (b) Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being;

I.C. § 16-1602(25). Neglect may also occur where "[t]he parent(s) has failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth in section 16-1629(9), Idaho Code." I.C. § 16-2002(3)(b). The time standard as defined in Idaho Code § 16-1629(9) states, in relevant part:

> There shall be a rebuttable presumption that if a child is placed in the custody of the department and was also placed in out of the home care for a period not less than fifteen (15) out of the last twenty-two (22) months from the date the child entered shelter care, the department shall initiate a petition for termination of parental rights. This presumption may be rebutted by a finding of the court that the filing of a petition for termination of parental rights would not be in the best interest of the child or reasonable efforts have not been provided to reunite the child with his family, or the child is placed permanently with a relative.

5

A court may also consider the events resulting in the child being placed in foster care when determining whether there was neglect. *In re Doe*, 145 Idaho 662, 665, 182 P.3d 1196, 1199 (2008).

The presumption in favor of the Department initiating a termination petition set out in Idaho Code § 16-1629(9) does not create a presumption that it is in the best interests of the child to terminate parental rights. *Idaho Dep't of Health & Welfare v. Doe*, 149 Idaho 474, 479, 235 P.3d 1195, 1200 (2010). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds, supported by substantial and competent evidence. *See id.* at 481, 235 P.3d at 1202.

**B.      The Magistrate's Decision to Terminate**

On appeal, Mother argues the magistrate's decision to terminate her parental rights was premature because of the changes she had made in her life, so that she would be better able to care for the child. The State responds that the magistrate's decision to terminate Mother's parental rights is supported by clear and convincing evidence of both a statutory ground for termination and that termination was in the child's best interests.

**1.      Statutory grounds**

In this case, the social workers, along with Mother, determined that there were four primary areas that needed to be addressed before the child could be returned to Mother's care: (1) her substance abuse issues; (2) her possible mental health issues; (3) the need for full-time employment; and (4) the need for adequate housing. Each of these was incorporated into Mother's case plan.

As to the issue of Mother's substance abuse, the evidence shows she continued to use methamphetamine largely throughout the pendency of the child protection case. She admitted to using methamphetamine on April 16, 2010, just over one week after the child's birth. She began outpatient treatment at a family services organization, but was quickly terminated from the program for failing to attend sessions. Mother admitted to the Department social worker that she had "had a setback" and used methamphetamine during this time. She started an outpatient program at a different treatment facility, but attended only half of the scheduled sessions before being accepted into an inpatient program. Although Mother did successfully complete the inpatient program, she relapsed into drug use within weeks of being released from the inpatient program. In the months between the inpatient program and her incarceration for failing to attend

a drug court date, she had attended less than half of the scheduled sessions in a second outpatient program and again tested positive for methamphetamine. After the short incarceration in December 2010 and January 2011, she missed scheduled drug tests, and when she was tested, tested positive. Mother was terminated from the second outpatient treatment center in January 2011. The discharge summary stated Mother failed to complete even the first goal of learning to accept how her addiction had created negative consequences in her life. The summary found Mother was not invested in the recovery process nor was she willing to make changes in her life that would support recovery efforts. By that time, Mother had attended only fourteen of the forty-four scheduled appointments, which included many individual sessions where she was to help develop her treatment plan. The summary also indicated Mother was not personally motivated to address her substance abuse, but rather was motivated by external factors. Even the threats of jail and losing her child did not motivate her to quit abusing drugs. It was only after the filing of the termination action and being incarcerated for four months that Mother made efforts to address her substance abuse by participating in an outpatient treatment program and submitting to weekly drug tests.

In terms of addressing her possible mental health issues, Mother submitted to a mental health evaluation that suggested she seek one-on-one counseling, but that she should begin with substance abuse counseling and treatment and then move on to addressing other issues. An assessment from the outpatient treatment center found alcohol and substance dependency, depression, anxiety, and conduct problems that needed to be addressed. There were also numerous references in the evidence to Mother's failure to take responsibility for her actions, her treatment, and the fact the child was in the State's custody. Instead, a visitation supervisor indicated that at visitations with the child, Mother did not use her time appropriately to bond with the child, but rather, spent the time blaming the Department for the child being under the State's care. The visitation supervisor further testified that Mother was not easily redirected to caring for and nurturing the child. Mother also struggled with parenting during her visitations because of either being under the influence of methamphetamine or because she was experiencing withdrawal symptoms, and she failed to bring appropriate supplies to the visitations for the child, such as diapers and wipes. There were further concerns about her commitment to addressing mental and behavioral problems, as exhibited by twenty years of substance abuse, past failures in outpatient treatment programs, a long history of relationships with abusive men,

and a failure to acknowledge any responsibility. While Mother at first seemed cooperative in addressing some of her issues, Mother became increasingly uncooperative with case workers and other Department employees up until the time of her arrest in March 2011--refusing to meet monthly, refusing to speak with persons about her case, and verbally assaulting case workers.

In addition to the severe noncompliance with the case plan in the areas of substance abuse and addressing her mental health issues, Mother at no time during the pendency of the child protection case provided verification of full-time employment or adequate housing. At times, Mother stated it was too hard to have a job because of all the meetings and court sessions she had to attend. At a later time, she claimed she was employed part-time but never provided information to confirm her employment or any income. Mother also claimed, at one point, that she was getting an apartment at a particular complex, but the claim was never verified. Mother contributed little, if any, towards supporting the child in the seventeen months the case was pending. Even by the time of her trial, Mother testified she did have housing, but she still had no employment, was not in a position to care for the child at that time, and was completely supported by her parents.

There was abundant evidence that Mother failed to comply with the court's orders in the child protective case and case plan, establishing a ground of neglect. Moreover, by the time of the termination hearing in September, the child had been in the custody of the State for seventeen months, meeting the time limit in Idaho Code § 16-1629(9). Additionally, the magistrate may consider both past and current conduct when determining whether grounds exist for terminating a person's parental rights. *State v. Doe*, 144 Idaho 839, 843, 172 P.3d 1114, 1118 (2007). Where the magistrate takes into account all the evidence, this Court will not reweigh the evidence. *Id*. at 842, 172 P.3d at 1117. Here, the magistrate also considered that Mother had attended narcotics anonymous classes during incarceration, participated in an outpatient therapy program, took anger management courses both in and out of jail, was taking a few educational courses, and was attending group and personal counseling. Still, he determined a statutory ground for termination existed through evidence establishing neglect.

We conclude, in light of all the evidence, there is substantial and competent evidence supporting the magistrate's finding that Mother had neglected the child due to her "inability to discharge any parental responsibility" and that the inability presented "a serious risk to the

child's health, safety and well-being."[2] *See In re Doe*, 149 Idaho 401, 406-07, 234 P.3d 725, 730-31 (2010) (concluding father neglected child because of evidence showing a failure to maintain housing, employment, or abstinence from controlled substances, which impaired his ability to provide proper parental care); *Doe*, 149 Idaho at 479-81, 235 P.3d at 1200-02 (finding substantial and competent evidence that termination was in the best interests of the children on the basis of neglect where parents repeatedly failed to comply with case plan, continued to use illegal drugs, missed required drug testing, and demonstrated an inability to provide proper parental care); *Doe*, 144 Idaho at 843-44, 172 P.3d at 1118-19 (finding neglect was established where mother made minimal efforts at reunification, continued to engage in illegal activity resulting in reincarceration, and did not demonstrate she had incorporated what she learned into her life after participating in programs while in prison).

### 2. Best interests of the child

In addition to finding the statutory basis of neglect, the magistrate also determined it was in the best interests of the child to terminate Mother's parental rights. The evidence before the magistrate showed Mother failed to demonstrate an ability to safely parent the child, failed to follow through the case plan, continued to use drugs, failed to obtain employment or adequate housing, failed numerous drug tests she had submitted to from the time the child was placed in foster care up to the point of her incarceration spanning a course of eleven months, returned to drug use just weeks after the inpatient treatment program, and demonstrated little or no motivation to maintain sobriety voluntarily for any length of time. Further, the child had developed a bond with the foster care provider and needed permanency. Mother had not shown, during the pendency of the action, any ability to discharge parental responsibilities.

At the trial, Mother admitted she had not done *anything* in her case plan until after the termination action was filed. The guardian ad litem testified that the case plan was not unattainable for Mother, but after working with Mother and witnessing her attend visitations with the child while high on methamphetamine, opined that termination was in the best interests of the child. Both social workers who had been assigned to the case also recommended that termination was in the best interests of the child, explaining the child's need for stability to grow

---

[2] The court also found abuse existed as a statutory ground, based on the fact that Mother had exposed the child to methamphetamine in utero.

and progress. Mother also testified to a twenty-year history of drug use and that she understood prognosis for recovery after such lengthy use was poor.

The magistrate found that Mother's efforts during and after her four-month incarceration were de minimus and did not appear to be sincere. Moreover, Mother was still on probation for injury to child, and any violation of the probation terms subjected Mother to the possibility of one to seven years in prison. The magistrate reflected on the fact that Mother had lost custody of four other children to their father precisely because of drug use and associated incarcerations. The magistrate's finding that termination was in the best interests of the child is supported by substantial and competent evidence.

## C.     Whether the decision to terminate was premature

Lastly, we address Mother's argument that, in light of all the efforts she made in the few months prior to termination, the termination was premature. To support her argument that termination was premature, Mother primarily relies on *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 752, 250 P.3d 803 (Ct. App. 2011), where this Court held a magistrate's order to terminate was erroneous given the substantial progress the father had made towards completing his case plan and his earnest efforts to be reunited with his children. We concluded that, having been requested by the father to have three or four additional months to complete the case plan before proceeding with termination, the magistrate erred in refusing the request, particularly in light of the evidence of his progress. *Id.* at 758, 250 P.3d at 809. The evidence before the magistrate demonstrated that the father, though he had one relapse into alcohol use, had otherwise complied with probation terms, submitted to alcohol tests with successful results, attended alcohol treatment sessions regularly, and accepted responsibility for his addiction and the negative consequences resulting therefrom. Furthermore, he had made all of his scheduled visitations with his children, acknowledged his poor treatment of them in the past and apologized to them for his behavior, engaged his children in activities and helped with homework during the visitations, and petitioned for and was granted continuing visitation with his children even after he knew termination was being sought. *Id.* at 754-55, 758-59, 250 P.3d at 805-06, 809-10. Both treatment providers and the children's guardian ad litem gave positive reviews of the father, his efforts towards rehabilitation, and his strides in building a better relationship with his children. *Id*. at 758-59, 250 P.3d at 809-10. By the time of termination, the father had maintained full-time employment for quite some time and simply asked for a few more months to finish

paying off some debts, reinstate his driver's license and obtain adequate housing, which he already was in the process of doing. Therefore, we concluded the magistrate erred in failing to take into account the practicalities of the father's situation and in denying the request for more time before terminating parental rights. *Id.* at 762-63, 250 P.3d at 813-14.

The facts of the above case are vastly different than those presented in this case. Unlike the parent at issue in *Doe*, 150 Idaho 752, 250 P.3d 803, Mother had not just one relapse, but continued to use drugs for over eleven months into the pendency of this case. Mother also missed several visitations with her child (attending only five of twelve scheduled visitations after her incarceration in December 2010 and January 2011 and before she was again arrested) and did not engage in appropriate parenting behavior during those visitations. Moreover, after visitations ceased, Mother did not call or petition for more visitations until shortly before her trial. It had been a few years since Mother was employed full-time and she at no time during the pendency of this case could verify that she had even part-time employment. Her attendance at outpatient sessions was sporadic up until just weeks prior to the trial, and her prognosis for full recovery, based on her length of drug use and denying responsibility for the consequences of her drug abuse, was poor. Also of note, Mother did not make a direct request for more time to complete the case plan and she testified that she would need an unknown amount of additional time to be ready to parent without help. The statutory time had passed for initiating termination of Mother's parental rights and the magistrate was under no obligation to wait an unknown amount of additional time before granting termination and moving towards a permanency goal for the child.

## IV.

## CONCLUSION

We conclude the magistrate's decision to terminate Mother's parental rights, on the basis of neglect and because it was in the child's best interests, was supported by substantial and competent evidence. Additionally, we conclude that the magistrate did not prematurely order termination. Therefore, we affirm the order terminating parental rights.

Chief Judge GRATTON and Judge LANSING **CONCUR.**

11