**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50641**

| | | |
|---|---|---|
| In the Interest of:  John Doe I, John Doe II, and Jane Doe I, Children Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) | **Filed:  July 10, 2023** |
| Petitioner-Respondent, | ) ) ) | **Melanie Gagnepain, Clerk** |
| v. | ) ) | **THIS IS AN UNPUBLISHED** |
| JANE DOE (2023-12), | ) ) ) | **OPINION AND SHALL NOT BE CITED AS AUTHORITY** |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Cassia County.  Hon. Blaine Cannon, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Migliuri & Rodriguez, PLLC; Lisa B. Rodriguez, Twin Falls, for appellant.

Hon. Raúl R. Labrador, Attorney General; James T. Baird, Deputy Attorney General, Twin Falls, for respondent.

—————————————————————

HUSKEY, Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights. Doe alleges the magistrate court erred in finding a statutory basis for terminating her parental rights.  Because Doe fails to challenge one of the statutory grounds upon which the magistrate court found neglect, that Doe neglected her children by failing to provide proper care and control, we affirm the magistrate court's finding of neglect on that ground.  As to the other statutory ground for finding neglect, substantial and competent evidence supports the magistrate court's finding that Doe neglected the children by failing to complete the case plan.  Substantial and competent evidence also supports the magistrate court's conclusion that termination of her parental rights is

1

in the best interests of the children and, thus, the judgment terminating Doe's parental rights is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the mother of the children, John Doe I, John Doe II, and Jane Doe I,[1] in this action. Jane Doe I tested positive for controlled substances at birth and was declared in imminent danger. The Idaho Department of Health and Welfare (Department) filed a child protection petition, and Jane Doe I was placed into foster care. Doe stipulated to the Department's temporary custody of the child at the shelter care hearing. At the adjudicatory hearing, Doe stipulated to John Doe I and John Doe II remaining in Doe's custody under the protective supervision of the Department. Doe stipulated to, and the magistrate court ordered, a case plan for Doe to complete as part of the reunification efforts with Jane Doe I and as part of the protective supervision of John Doe I and John Doe II. Jane Doe I was placed with her father for a ninety-day extended home visit. After a short period of time, Doe, John Doe I, and John Doe II moved in with Jane Doe I's father. Prior to the expiration of the ninety-day extended home visit, both Doe and Jane Doe I's father relapsed on controlled substances and all three children tested positive for controlled substances. As a result, Jane Doe I was returned to the Department's custody and the Department obtained temporary custody of John Doe I and John Doe II. A new case plan was implemented for Doe to complete to reunify with all three children.

The magistrate court held regular review hearings while the children were in the Department's custody. During the pendency of the case, Doe lost her residence, became homeless, continued to use controlled substances, and failed to comply with her case plan. As a result, the Department filed a petition to terminate Doe's parental rights to the children. The magistrate court held a hearing on the petition at which individuals from the Department, Doe's treatment providers, the visitation supervisors, and the foster mothers testified. Following the hearing, the magistrate court found by clear and convincing evidence that, as a result of Doe's on-going substance abuse, she neglected the children by leaving them without proper parental care and control necessary for their well-being. The magistrate court also found Doe neglected the children by failing to complete the case plan. Ultimately, the magistrate court concluded that termination

---

[1]     The three children each have a different biological father. The fathers' rights to each of their children were also terminated but are not at issue in this appeal.

of Doe's parental rights is in the best interests of the children. Accordingly, the magistrate court terminated Doe's parental rights to the children. Doe timely appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

On appeal, Doe alleges the magistrate court erred in finding she neglected the children and that termination of her parental rights is in the best interests of the children. In response, the State contends the magistrate court did not err.

A parent has a fundamental liberty interest in maintaining a relationship with her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child

3

relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## A. The Magistrate Court Did Not Err by Finding Statutory Grounds Existed for Termination of Doe's Parental Rights

The magistrate court found two statutory bases for termination of Doe's parental rights to the children. First, the magistrate court found that because of Doe's on-going substance abuse, she neglected the children by leaving them without proper parental care and control necessary for their well-being. Second, the magistrate court found that Doe neglected the children by failing to comply with the case plan. On appeal, Doe argues the magistrate court erred in finding she neglected her children by failing to complete the case plan. The State argues the magistrate court did not err.

### 1. Neglect

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

If the court grants a judgment on more than one independent basis and the appellant does not challenge each basis for termination, then we must affirm the judgment. *Idaho Dep't of Health*

*& Welfare v. Doe (2017-36)*, 163 Idaho 274, 278, 411 P.3d 1175, 1179 (2018) (noting court need not address parent's argument because "the magistrate court's order contains additional, unchallenged findings of neglect that must be affirmed"); *Idaho Dep't of Health & Welfare v. Doe (2016-09)*, 163 Idaho 707, 711, 418 P.3d 1216, 1220 (2016) ("When a judgment is granted on alternative grounds and one of them is not addressed on appeal, we must affirm the judgment.").

### a.      Without proper care and control

Here, although Doe challenges the magistrate court's conclusion that she neglected the children by failing to complete the case plan, she fails to challenge the alternate basis for finding neglect--that because of Doe's conduct, she neglected the children by leaving them without proper parental care and control necessary for their well-being. The magistrate court concluded that because of Doe's on-going substance abuse, she neglected the children by failing to provide proper care and control during the pendency of the case, with the exception of a few, very limited time periods. The magistrate court detailed Doe's addiction and how that addiction prevented her from providing the care the children needed.

For example, the magistrate court found Doe was using methamphetamine during her pregnancy and when she gave birth to Jane Doe I. Doe delivered Jane Doe I a day or two before going to the hospital, where she and Jane Doe I were admitted; Jane Doe I's father also stayed in the hospital. Nursing staff at the hospital had difficulty rousing Doe and Jane Doe I's father to care for Jane Doe I despite Jane Doe I crying so loudly, she could be heard at the nursing station. Although Doe refused to take a drug screening test, an umbilical cord drug screening test for Jane Doe I tested positive for methamphetamine. Because of the test results and because of Doe's behavior in the hospital, Jane Doe I was declared in imminent danger. However, Doe had already left the hospital with Jane Doe I. The Department spent the next nine days attempting to locate Doe. Doe was aware the Department was looking for her and that Jane Doe I tested positive for methamphetamine; she also admitted to evading the Department because she did not want the Department to take custody of Jane Doe I. Doe then surrendered Jane Doe I to the Department. At that time, Doe had custody of John Doe I and John Doe II and was unemployed, homeless, and not receiving any public assistance.

Throughout the case, Doe continued to use methamphetamine with intermittent, short-lived periods of sobriety. For example, Doe was able to maintain her sobriety from February 2021 through late May 2021, but on May 28, 2021, Doe's hair sample tested positive for

5

methamphetamine; the three children's hair samples also tested positive for methamphetamine. By October 2021, there was a lack of communication between Doe and the Department for "the past couple of months," and the Department had no information about Doe's living circumstances, including her address. Doe's attendance at her substance abuse treatment program was sporadic, and she failed to appear for scheduled drug tests. In November 2021, Doe checked herself into a substance abuse treatment program. She did well for approximately three months, but then failed to complete the treatment and was discharged from the program at the end of February 2022. From then through July 2022, Doe continued to use methamphetamine and failed to maintain contact with the Department; as a result, once again, her whereabouts were unknown to the Department. In July 2022, Doe again checked herself into a partial-hospitalization treatment program and did well up to the time of the termination trial on August 9, 2022.

Despite Doe's short-lived progress on her first case plan, once the second case plan was ordered, Doe's behavior became neglectful. The magistrate court found that once the second case plan was ordered, Doe's behavior constituted neglect because Doe did not: (1) maintain sobriety; (2) provide a stable residence suitable for the children; and (3) avail herself of all the visitation available. Despite Doe's apparent progress after July 2022, the magistrate court determined that Doe's conduct throughout the pendency of the case demonstrated by clear and convincing evidence that she neglected her children because her conduct or omissions resulted in the children being without proper care and control. Because Doe does not challenge that finding and because the finding is supported by clear and convincing evidence, the magistrate court did not err in finding that Doe neglected her children by leaving them without proper parental care and control necessary for their well-being.

### b. Failure to complete the case plan

Pursuant to Doe's initial case plan, Doe was required to: (1) complete a substance abuse evaluation and follow its recommendations; (2) complete random drug testing; (3) successfully complete the infant/toddler program for Jane Doe I and John Doe II and parenting classes for all three children; (4) obtain and maintain a safe, stable, sanitary, and drug-free home and have any individual living in the home approved by the Department; (5) cooperate with random home visits by the Department; (6) attend all appointments for the children; (7) obtain legal employment and provide verification of income; (8) exercise visitation with Jane Doe I; and (9) sign releases of information.

6

The Department noted that Doe made excellent progress on her initial case plan for the first three months after it was ordered: she completed a substance abuse evaluation and some of her substance abuse classes; she was working on her parenting classes for all the children; she was legally employed; and she was cooperative with the Department. At that time, the goal was reunification of Doe and Jane Doe I. Ultimately, Doe completed the sixteen-week parenting class but because she did not turn in any homework, she did not obtain a graduation certificate. However, after just a few months, Doe tested positive for methamphetamine, as did all three children. Doe and Jane Doe I's father both admitted to relapsing and, as a result, the children were declared in imminent danger and removed from Doe's care.

Doe stipulated to the entry of a new case plan. This plan required Doe to: (1) complete random drug testing; (2) complete a substance abuse evaluation and follow all recommendations; (3) have Jane Doe I and John Doe II evaluated through the infant/toddler program; (4) maintain a safe, stable, sanitary, and drug-free home for her and the children with the Department approving any other individuals living in the home and notify the Department within twenty-four hours if her housing status changed; (5) participate in the children's medical and dental appointments; (6) allow random and scheduled home visits with the Department and the guardian ad litem; (7) participate in regular visitation with the children; and (8) meet with a mental health professional for assessment. At that time, Doe was residing with Jane Doe I's father.

After a short period, although Doe attended several relapse prevention classes, she failed to comply with drug testing and would not contact the Department social worker. The social worker noted that Jane Doe I's father was arrested on new felony charges and was incarcerated. The social worker requested a status hearing because Doe was "making minimal if any progress" on her case plan. Thereafter, because Jane Doe I's father was incarcerated, Doe became homeless and because Doe had not contacted the Department for several months, the Department had no information on Doe's living situation. Doe was "sporadic" in her relapse classes, and the treatment provider indicated that Doe would need to begin an intensive outpatient program due to her lack of progress on the current treatment program, prior lack of success with relapse prevention classes, and Doe's history of methamphetamine addiction. Doe also failed to appear for two hair follicle drug tests.

Thereafter, Doe contacted the social worker indicating she felt overwhelmed by her methamphetamine addiction, she would benefit from an inpatient program, and she wanted to

relocate as she had too many unhealthy relationships in the area that impaired Doe's ability to maintain sobriety. Doe changed treatment providers and was admitted to a partial hospitalization treatment center. At this time, the Department recommended the permanency goal be changed from reunification to termination of Doe's parental rights for the three children; the magistrate court agreed.

Although Doe enrolled in treatment in July 2022, the Department noted that this coincided with the Department's decision to change the goal of the case from reunification to termination of Doe's rights. The Department noted that upon taking the children back into custody in June 2021 until the Department began the process of terminating Doe's parental rights in July 2022, Doe had done little, if anything, to address the issues that brought the children into the Department's custody. Doe was using methamphetamine intravenously on a regular basis, was essentially homeless, did not make regular contact with the Department, and was unable to provide a safe, stable, drug-free home for the children. After the Department recommended terminating Doe's parental rights, Doe appeared to be making progress to alleviate the concerns that brought the children into care. However, those efforts only lasted about two months before Doe quit attending treatment and again failed to maintain communication with the Department.

Doe was ultimately discharged from the treatment program where she had been residing. Additionally, Doe underwent a hair follicle test, which came back negative for any controlled substances. This was concerning to the Department, as Doe had been prescribed several medications which should have been detected in the drug screen. The Department believed either Doe was not taking her prescribed medication or she had adulterated the hair sample. However, Doe continued to visit her children and the visits, for the most part, went well.

Beginning in July 2022, Doe made progress in her mental health and substance abuse treatment programs. The termination hearing took place on August 1, 2022, September 9, 2022, and November 4, 2022. Doe began living with her grandmother after September 1, 2022, whose home could accommodate the children, and Doe was employed. However, because Doe did not provide the residence information to the Department until September 8, 2022, the day before the hearing recommenced, the Department could not approve Doe's residence at her grandmother's house. The magistrate court noted that Doe's living environment and lifestyle were unstable and Doe had not maintained consistent safe, stable, or drug-free housing during the pendency of the case.

The magistrate court found that although Doe had made "significant improvement" after July 2022, prior to that time, Doe's noncompliance with both case plans was significant. For example, from May 2021 until July 2022, Doe failed to complete any of the requirements of her second case plan. She did not complete the infant/toddler program, and Jane Doe I and John Doe II were discharged from the program because of Doe's lack of involvement; Doe missed thirty of the seventy-eight scheduled visits with the children, was late for many of the visits she did attend, and her behavior at the visits did not consistently promote the children's stability or welfare; Doe had on-going substance abuse issues, did not maintain sobriety, did not complete the required substance abuse treatment, and failed to complete all drug tests requested by the Department; and Doe had several residences during the pendency of the case and did not keep the Department informed of her living circumstances during the case.

At the time of the termination hearing, Doe was attending aftercare classes, was not associating with her previous friend group, and was experiencing her longest period of sobriety as an adult. Nonetheless, the magistrate court concluded that Doe had not completed the case plan tasks in the time contemplated by the case plan and her recent progress did not ameliorate the lack of progress throughout the case. Because these findings are supported by clear and convincing evidence, the magistrate court did not err in finding that Doe neglected her children by failing to complete the case plan.

**B.      Best Interests of the Children**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the children to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the children's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the children's care after the child is placed in protective custody, the improvement of the children while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the children to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App.

9

2012). Here, the magistrate court found that termination is in the best interests of the children because the children had improved significantly while in foster care and termination would provide the children with needed stability and permanency. The magistrate court did not err.

The foster parents testified that each of the children had dysregulated behaviors when they were initially placed with the foster parents, but those behaviors lessened. Jane Doe I's paternal grandmother is the foster parent for Jane Doe I and John Doe II. Grandmother testified that both children grew from the thirtieth percentile for height and weight to the fiftieth percentile at the time of the hearing. She testified that John Doe II had become much more verbal and spoke more clearly; he had become much less argumentative; and his aggressive behavior at daycare and some symptoms of obsessive-compulsive disorder were being addressed. She noted that John Doe II's on-going educational issues were also being addressed. Jane Doe I came into grandmother's care when she was approximately seven months old. Since that time, not only had she reached the fiftieth percentile for height and weight, Jane Doe I was meeting all developmental milestones. Grandmother testified that both children were at risk for developmental delays and she was arranging services should they be needed. Finally, grandmother testified that John Doe I was initially placed with her along with his siblings but grandmother was not able to address John Doe I's behavioral needs while providing care for the other children so John Doe I was placed with another foster parent.

The foster parent testified that John Doe I was wild and difficult to control when he came into her care, but he improved and is much better at controlling his behavior. However, following visits with Doe, John Doe I reverts to his prior misbehavior. The foster parent testified that John Doe I needs stability and boundaries to continue his progress.

The magistrate court noted that Doe made good faith efforts from July 2022 through the completion of the termination trial on November 4, 2022. However, the magistrate court concluded that prior to July 2022, Doe's lifestyle was unstable and unsafe for the children, which had a significant, negative impact on the children. And even with her recent progress, Doe had not indicated she is financially stable and able to care for the children, particularly in light of her extensive methamphetamine addiction and her behavior during the pendency of the case. The magistrate court found that Doe's risk of returning to her previous behavior was unacceptably high and thereby put the children at risk. The magistrate court found this was because Doe's commitment to treatment and the case plan was inconsistent, Doe had not demonstrated that she

10

was capable of consistently and safely caring for the children, and Doe had no plan to address John Doe I's significant behavioral issues and the impact of those issues on Jane Doe I and John Doe II. The magistrate court concluded that continued placement with the foster parents gave the children the consistency, permanency, and stability the children need. The magistrate court concluded the children had each done well and the foster parents provided the level of care that each child needed. The magistrate court ultimately concluded that as a result, it is in the best interests of the children to terminate Doe's parental rights. Because this finding is supported by clear and convincing evidence, the magistrate court did not err in finding that termination of Doe's parental rights is in the best interests of the children.

## IV.
## CONCLUSION

The judgment terminating Doe's parental rights to the children is affirmed.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.