**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 52762**

| | |
|---|---|
| In the Matter of: John Doe I, A Child Under Eighteen (18) Years of Age. | ) ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) |
| Petitioner-Respondent, | ) ) |
| v. | ) ) |
| JANE DOE (2025-10), | ) ) |
| Respondent-Appellant. | ) ) ) |

Filed: July 25, 2025

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY

---

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Andrew Ellis, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Eric D. Frederiksen, State Public Defender; Joshua M. Wickard, Deputy Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Peter A. Mommer, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights to her child, John Doe I (Child). Doe argues the magistrate court erred in admitting a previous judgment terminating her parental rights from another case to consider whether it is in Child's best interests to terminate Doe's parental rights in this case. The magistrate court's judgment terminating Doe's parental rights is affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Doe is the biological mother of Child. Child was born in October 2024 and umbilical cord testing indicated Child had methamphetamine in his system at the time of his birth; as a result,

1

Child was placed in the temporary custody of the Idaho Department of Health and Welfare (Department) and then placed in foster care. At the time Child was placed in foster care, Doe had an open Child Protection Act (CPA) case involving two of her other children. This case was opened as a separate case because the prior CPA case began in August 2022 and the termination trial in that case was held ten days after Child's birth. Doe's parental rights to her other two children were terminated when Child was approximately three weeks old.[1]

The Department caseworker assigned to this case was the same caseworker assigned to Doe's other active CPA case because of the timing overlap between the two cases and the caseworker's familiarity with Doe and her circumstances. In this case, Doe admitted to using methamphetamine twice in the months preceding Child's birth, as well as two days before his birth. Based on the results of Child's umbilical cord testing, Doe was charged with one count of felony possession of a controlled substance. As a condition of pretrial release on the drug charge, Doe was required to wear drug detecting adhesive patches. Doe tampered with one of the patches, which was treated as a presumptive positive test for controlled substances, and ultimately refused to wear any additional patches. Based on the prior involuntary termination of Doe's parental rights, the Department filed a motion for a finding of aggravating circumstances; the magistrate court granted the motion and suspended the Department's obligation to make any further efforts towards reunification between Doe and Child, although Doe continued to have weekly visits with Child.

The Department moved to terminate Doe's parental rights to Child on three grounds: (1) that her parental rights to two of her other children had been terminated; (2) Doe neglected Child because Child was without proper parental care and control as a result of Doe's ongoing and untreated substance use disorder and her ongoing mental health conditions impaired her ability to safely parent Child; and (3) Doe neglected Child because Child was without proper parental care and control based on Doe's inability to maintain a safe and stable home free from domestic violence. Following the termination trial, the magistrate court issued written findings. The magistrate court declined to terminate Doe's parental rights pursuant to Count I, finding it was not a statutory basis for terminating parental rights, but found the Department proved by clear and convincing evidence that Doe neglected Child as alleged in Counts II and III. The magistrate court

---

[1] The termination of Doe's parental rights to her other children was affirmed on appeal in *Doe v. State*, Docket No. 52443 (Ct. App. Mar. 14, 2025) (unpublished).

2

found that Doe had a lengthy and chronic untreated substance abuse disorder; Doe had two convictions and a third charge pending for felony possession of a controlled substance; and Doe's substance abuse impaired her ability to parent as it interferes with her ability to maintain housing, obtain employment, and stay out of jail. Given Doe's history, the magistrate court indicated it had no confidence in Doe's ability to treat her addiction and achieve or maintain sobriety.

The magistrate court also noted Doe had no intent on ending her relationship with the putative father and was dependent upon him for her housing. The magistrate court found the relationship was marked by domestic violence, instability, and mutual encouragement to use controlled substances. Because of the relationship, the magistrate court found the home was not a safe, stable, or an appropriate home for Child.

The magistrate court also noted that Doe had another open CPA case since August 2022. During that case, Doe failed to comply with her court ordered case plan to address her substance abuse, her mental health issues, and her lack of housing and employment. After having thirty-one months to reunify with her other two children, Doe had done little to mitigate any of the safety concerns, resulting in those two children and Child all being placed in foster care. Ultimately, the magistrate court concluded that the Department proved by clear and convincing evidence that Doe neglected Child due to her ongoing substance abuse issues.

The magistrate court found that as a result of the neglect, it is in Child's best interests to terminate Does parental rights.[2] Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143

---

[2] The magistrate court entered an order of non-establishment of paternity in the case.

Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

On appeal, Doe challenges the magistrate court's admission of the findings of facts, conclusions of law and decree terminating parental rights (Exhibit 2) from Doe's previous CPA case. Doe argues that the magistrate court's admission of Exhibit 2 was an abuse of discretion because the basis upon which the magistrate court admitted Exhibit 2 was that the document was "certainly relevant at the previous trial and [Doe] was represented by counsel." Doe argues the magistrate court did not act consistently with the applicable legal standard because it did not conduct the proper Idaho Rule of Evidence 403 balancing test. Doe further argues the magistrate court heavily relied on the facts in Exhibit 2 as a basis for terminating Doe's parental rights in the current case and the error was not harmless because the Department did not present sufficient evidence to justify termination other than the document from the prior case.

The Department argues that Doe has waived any challenge to the magistrate court's findings regarding the statutory bases for terminating her parental rights because Doe fails to challenge either the factual findings or the legal conclusions of the magistrate court related to its findings of neglect. The Department makes a similar argument as to the findings regarding the best interests analysis which resulted in the termination of Doe's parental rights to Child. Finally, the Department argues the magistrate court did not err in admitting Exhibit 2.

### A. Statutory Bases for Terminating Doe's Parental Rights

Doe does not directly challenge the magistrate court's findings that she neglected Child on two alternative statutory bases. Doe only argues that the magistrate court erred in admitting and considering Exhibit 2 as a basis for terminating Doe's parental rights. The State argues the magistrate court could properly consider past and current behavior when considering whether grounds exist to terminate parental rights. Each statutory ground is an independent basis for termination. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an

4

order that parental rights be terminated. *Doe*, 148 Idaho at 245-46, 220 P.3d at 1064-65. Here, the magistrate court found two alternate statutory bases upon which Doe's parental rights could be terminated; if the record supports either of those bases, we can affirm the magistrate court's findings. In this case, independent of any information contained in Exhibit 2, the record demonstrates clear and convincing evidence that Doe neglected Child based upon her substance abuse disorder.

Doe argues that without Exhibit 2, the Department did not establish by clear and convincing evidence that Doe neglected Child. However, the testimony at the termination trial provided clear and convincing evidence that Doe neglected Child based on her chronic substance abuse, even without the admission of Exhibit 2. For example, the Department moved for a finding of aggravated circumstances and the motion was addressed during an adjudicatory hearing on November 15, 2024. That transcript is not included in the record on appeal, but the court minutes indicate the magistrate court made certain findings. At the termination trial, the State moved to admit exhibit 6, which was the findings of fact, conclusions of law and order regarding aggravated circumstances that was entered by the magistrate court earlier in the case; Doe did not object to that document. When a party appealing an issue presents an incomplete record, this Court will presume that the absent portion supports the findings of the lower court. *Gibson v. Ada Cnty.*, 138 Idaho 787, 790, 69 P.3d 1048, 1051 (2003).

Moreover, the evidence presented at the trial supports the magistrate court's findings regarding Doe's substance abuse resulting in her neglecting Child. For example, the State called the individual responsible for documenting Doe's drug testing and compliance during the pendency of the case. That witness testified that there were three periods when Doe wore a drug detecting patch and that during two of those periods, Doe tested positive for methamphetamine. While the magistrate court sustained the objection to information from the first period, it admitted the same information from the second period in which Doe tested positive for methamphetamine. The worker testified that during a fourth period, Doe removed the drug monitoring patch, which was viewed as a positive test for illegal drugs. While it is true there was no case plan requiring Doe to comply with drug testing in this case, Doe did not move to exclude the evidence on that basis and the magistrate court could properly consider that evidence as relevant to Doe's ongoing substance abuse disorder and its effect on Doe's ability to safely and appropriately parent Child.

Officer Love testified that he responded to the hospital after receiving information that Child tested positive for methamphetamine at birth. Doe admitted to Officer Love that she used methamphetamine twice in the two months prior to Child's birth and again two days prior to Child's birth.

The caseworker, who was the same caseworker in Doe's prior CPA case, also testified. The caseworker testified that she had been in contact with Doe since the previous CPA trial, which ended approximately three weeks after Child's birth. The caseworker confirmed that Doe had obtained housing with Child's putative father but given the ongoing domestic violence and the mutual enabling of drug use, the housing was not a safe placement for Child. The caseworker testified that although Doe reported she was employed, Doe never provided proof of income or any other financial benefits that would provide support for Child. The caseworker also agreed that despite completing a substance abuse and mental health treatment program, Doe continued to suffer from substance use disorders. The caseworker also testified the Department was concerned about Doe's ability to care for Child given that Doe's substance abuse history was chronic, Doe had not been able to demonstrate a period of sobriety, and Doe failed to comply with the drug testing requirements in her pending criminal case. The caseworker also testified that Doe had weekly visitation with Child, the visits had gone well, and Doe had a bond with Child. The caseworker was also concerned about Doe's relationship with the putative father because the two enabled each other to minimize their substance abuse and need for treatment. Finally, the caseworker testified that Child needed to have a secure attachment to a caregiver and in light of Doe's history in the child protection system, and in her life generally, Doe had not shown she was able to prioritize Child's needs over her own. The caseworker also testified that Child was doing very well in his foster placement.

The guardian ad litem testified that she reached out via text messaging to Doe approximately twice a month during the pendency of the case and had three text messages, in total, from Doe and that the messages were erratic, rambling, and "unkind." The guardian ad litem testified that her concerns about Doe's ability to care for Child stemmed from Doe's "extremely long" history of substance use, Doe's inability to maintain sobriety, and Doe's long-term inability to maintain stable housing and stable, gainful employment. For example, the guardian ad litem testified that Doe and the putative father admitted that Doe had used methamphetamine during the pregnancy and that the putative father had obtained the methamphetamine for Doe. Doe's decision

to continue to reside with the putative father caused the guardian ad litem to conclude that Doe was not making decisions that would support her sobriety and permit her to adequately parent Child. The guardian ad litem agreed that Child had positive interactions with Doe during visitation but disagreed that Child was bonded to Doe because indications of a bond in light of Child's age (approximately four months old) would not be recognizable in any relationship outside of Child's relationship with his primary caregiver, the foster parents. The guardian ad litem was also concerned about Doe's involvement in her most recent criminal case, as Doe was facing two new felony charges and Doe's future incarceration status was unknown. Finally, the guardian ad litem testified that Child was a very happy child and was thriving in his foster home and that terminating Doe's parental rights is in Child's best interests because of Doe's inability to meet Child's basic needs and Doe's inability to understand why Child was removed and how Doe's actions negatively impacted Child.

During closing argument, Doe argued that absent Exhibit 2, there was no indication of domestic violence between Doe and the putative father, that there was appropriate interaction between Doe and Child during visits, there was no evidence that the residence Doe shared with the putative father was unsafe, and there was no active case plan, so the magistrate court could not find that Doe failed to complete any tasks relative to a case plan. The Department agreed that some of the factual information was not elicited at the trial because the magistrate court admitted Exhibit 2, which contained some of the factual support for the Department's allegations of neglect. We need not address whether the magistrate court erred in admitting Exhibit 2 without conducting the I.R.E. 403 balancing test because the magistrate court explicitly found that Doe neglected Child by failing to provide proper care and control due to her chronic and on-going substance abuse and the evidence, excluding Exhibit 2, provided sufficient evidence to support the magistrate court's finding of neglect.

## B.     Best Interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). A court may consider past conduct in determining whether grounds exist for terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 959, 277 P.3d 400, 406 (Ct. App. 2012). When determining whether termination is in the child's best interests, the trial court may

consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Doe*, 152 Idaho at 956-57, 277 P.3d at 403-04.

In finding that it is in Child's best interests to have Doe's parental rights terminated, the magistrate court held that it is in Child's best interests to be raised in a safe and stable home with a sober, consistent caregiver, and that since August 2022, Doe had shown she was unable to meet that basic threshold. The magistrate court found that Doe was unsuccessfully battling her addiction to methamphetamine and marijuana and was unable to obtain safe and stable housing. The magistrate court also noted that Doe had new criminal felony charges which could jeopardize her liberty. Finally, the magistrate court noted that Doe had not demonstrated in the past thirty-one months that she can meet the needs of any of her children.

Like its finding of neglect, there is sufficient evidence in this case, outside of the information contained in Exhibit 2, to support the magistrate court's conclusion that terminating Doe's parental rights is in the best interests of Child. Doe did not object to the magistrate court admitting and considering the finding of aggravated circumstances based on the termination of Doe's parental rights to two of her children in the case that was active at the time the current case was open. Because that transcript is not in the record, we presume that any findings made during that hearing support the decision in this case. Evidence in this case indicated that approximately three weeks after Child's birth, Doe's parental rights were terminated to two of her other children. The district court properly considered that evidence, along with the other evidence in this case, including the testimony of the witnesses, and concluded that terminating Doe's parental rights is in the best interests of Child. The magistrate court did not err in so finding.

## IV.

## CONCLUSION

The magistrate court did not err in finding that termination of Doe's parental rights is in Child's best interests because its findings are supported by substantial and competent evidence. Therefore, the judgment terminating Doe's parental rights is affirmed.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.